E K

HP000091

RESIDENTIAL UNIT NUMBER - A8 and B8
PARKING SPACE UNIT NUMBER - GA14 and GA15
ROOF TERRACE UNIT NUMBER – N/A

HUNTERS VIEW CONDOMINIUM
48-15 11th Street
LONG ISLAND CITY, NEW YORK

(TO BE EXECUTED IN QUINTUPLICATE)

AGREEMENT, made as of _JAN 24, 2008_ between Sponsor (defined below) and Purchaser (defined below).

WITNESSETH:

1.     THE PLAN. Purchaser acknowledges having received and read a copy of the Offering Plan for HUNTERS VIEW CONDOMINIUM dated September 11, 2007 and all amendments thereto, if any filed with the Department of State of New York (hereinafter, collectively, referred to as the "Plan") at least three (3) business days prior to Purchaser's signing this Agreement. If Purchaser has not received and read the Plan and all amendments thereto at least three (3) business days prior to Purchaser's signing this Agreement, Purchaser shall have the right to rescind this Agreement by sending written notice of such rescission to Sponsor by certified or registered mail, return receipt requested, or by personal delivery, in either case within seven (7) days from the date Purchaser delivers an executed Purchase Agreement together with the required Deposit to the Selling Agent. The Plan is incorporated herein by reference and made a part hereof with the same force and effect as if set forth at length. In the event of any inconsistency between the provisions of this Agreement and the Plan, the provisions of the Plan will govern and be binding, except as to inconsistencies arising from changes to the Purchase Agreement negotiated between Sponsor and Purchaser. Purchaser hereby adopts, accepts and approves the Plan (including, without limitation, the Declaration, By-Laws and Rules and Regulations contained therein) and agrees to abide and be bound by the terms and conditions thereof, as well as all amendments to the Plan duly filed by Sponsor. Notwithstanding anything to the contrary contained in this Agreement, nothing in the Plan or this Agreement shall be deemed to create any privity of contract between the Purchaser and any person identified in the Plan or any documents filed in connection therewith as a principal of Sponsor or Selling Agent, nor shall the Purchaser have any rights as against any such principal by reason of the incorporation of the Plan in this Agreement.

2.     DEFINITIONS. Terms used herein which are also used in the Plan shall have the same meanings as they do in the Plan, unless the context requires otherwise.

2.1    "Sponsor" means 11/49 Realty LLC, having an office c/o Simone Development Company LLC, 1000 Main Street, New Rochelle, New York 10801. Sponsor's taxpayer identification number is 20-3481913.

C:\Documents and Settings\ped\Local Settings\Temporary Internet Files\OLK241\#407008 v2 – Purchase Agreement - HV - Units 8A and 8B.doc

1

HP000092

2.2.   "Purchaser" means Richard Shiu having an address at 4-74 48th Avenue, Apt. 35D, Long Island City, NY 11109.  Purchaser's social security number is 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.

2.3   "Attorney for Sponsor" means Ruskin Moscou Faltischek, P.C. having an office at 1425 RexCorp Plaza, 15th Floor, East Tower, Uniondale, New York 11556.

2.4   "Attorney for Purchaser" means Eric Gonchar, Esq. having an address at Kane Kessler, P.C., 1350 Avenue of the Americas, 26th Floor, New York, NY 10019; Telephone Number: 212-519-5161; Facsimile Number: 212-262-1766.

2.5   "Selling Agent" means Brown Harris Stevens Project Marketing, having an office at 675 Third Avenue (Suite 411), New York, New York 10017.

2.6   "Co-Broker" means N/A.

3.   THE UNIT.  Upon and subject to the terms and conditions set forth herein, Sponsor agrees to sell and convey, and Purchaser agrees to purchase, the Unit(s), having the Unit Number(s) in the Declaration, together with (its) (their) undivided % of interest in the Common Elements appurtenant to such Unit(s) set forth below (provided that Sponsor agrees to combine the Residential Units A8 and B8 into one (1) tax lot):

| UNIT TYPE | UNIT NO. | % OF COMMON INTEREST | PURCHASE PRICE |
|---|---|---|---|
| Residential Unit | A8 | 1.3291% | $638,475.00 |
| Residential Unit | B8 | 1.8113% | $870,075.00 |
| Parking Space Unit | GA14 | 0.0948% | $75,000.00 |
| Parking Space Unit | GA15 | 0.0937% | $75,000.00 |
| Total % of Common Interest | | 3.3289% | |
| Total Purchase Price | | | $1,658,550.00 |

4.   PURCHASE PRICE.

4.1   The purchase price for the Residential Unit, Parking Space Unit and Roof Terrace Unit, if applicable ("Purchase Price") is:

$1,658,550.00

The Purchase Price is payable as follows:

(a)   $ 165,855.00 (the "Deposit"), (ten percent (10%) of the Purchase Price) due upon Purchaser's signing and submitting this Agreement check (subject to collection), receipt of which is hereby acknowledged;

(b)   $1,492,695.00 constituting the balance of the Purchase Price, by

C:\Documents and Settings\ped\Local Settings\Temporary Internet Files\OLK241\#407008 v2 – Purchase Agreement – HV – Units 8A and 8B.doc

HP000093

wire transfer of immediately available federal funds or by good certified check of Purchaser or official bank check payable on the delivery of the deed as hereinafter provided.

The Residential Unit, Parking Space Unit and Roof Terrace Unit, if applicable, shall collectively be referred to as the "Unit".

The obligations of Purchaser to close hereunder are conditioned upon the requirement, if any, of the acceptance by the Attorney General of the State of New York of an amendment to the Plan effecting the combining of Units A8 and B8 into one (1) Unit substantially in accordance with the preliminary floor plan annexed hereto as Exhibit C. Sponsors shall only be required to perform work to combined Units A8 and B8 as depicted on Exhibit C and shall not be required to further customize the Units or accept any change orders.

Purchaser shall be permitted to store two (2) bicycles in an area to be determined by Sponsor pursuant to a license agreement substantially in the form annexed hereto as Exhibit D.

Purchaser shall be permitted to utilize approximately a 3' x 4' x 7' storage space in the basement of the Building pursuant to a storage license agreement substantially in the form annexed hereto as Exhibit E.

4.2     Wires shall be of immediately available federal funds wired to an account designated by the Sponsor. All checks shall represent United States currency, be drawn on or issued by a United States Bank or trust company which is a member of the Federal Reserve System and shall be unendorsed. The Deposit shall be made payable to the direct order of "Ruskin Moscou Faltischek, P.C., Escrow Agent." The balance of the Purchase Price shall be by wire or made payable to the direct order of "11/49 Realty LLC" (or such other party as Sponsor directs to Purchaser, in writing at least three (3) days prior to the date of closing of title). If any check is returned for insufficient funds or any other reason, such return shall be deemed to be a default by Purchaser under this Agreement and shall entitle Sponsor to exercise any of the remedies set forth in Article 14 hereof. Notwithstanding the foregoing, if the check representing the Deposit is returned for insufficient funds or any other reason, such return shall be deemed to be a non-curable default by Purchaser and the Agreement shall automatically be deemed cancelled. Upon the cancellation of this Agreement, Purchaser and Sponsor will be released and discharged of all further liability and obligations hereunder and under the Plan, and the Unit may be sold to another as though this Agreement had never been made, and without any obligation to account to Purchaser for any of the proceeds of such sale.

5.     <u>DEPOSIT TO BE HELD IN TRUST</u>. All Deposits made pursuant to this Agreement are subject to the requirements of Sections 352-e(2)(b) and 352-h of the New York General Business Law and the Attorney General's regulations promulgated pursuant thereto. All monies received from Purchaser towards the Deposit shall be delivered to Ruskin Moscou Faltischek, P.C., as escrow agent ("Escrow Agent") and shall be held by Ruskin Moscou Faltischek, P.C. in a segregated Escrow Account at North Fork Bank located at 200 Fifth Avenue, Pelham, New York 10803 in accordance with the section of the Plan entitled "Escrow

C:\Documents and Settings\ped\Local Settings\Temporary Internet Files\OLK241\#407008 v2 - Purchase Agreement – HV – Units 8A and 8B.doc

3

HP000094

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

PURCHASER(S):

_____
Richard Shiu

_____

SPONSOR:
11/49 REALTY LLC

By: _____
Name: Joseph Simone
Title: Manager

C:\Documents and Settings\ped\Local Settings\Temporary Internet Files\OLK241\#407008 v2 – Purchase Agreement – HV – Units 8A and 8B.doc

21

HP000095

**Jose Rivera**

| | |
|---|---|
| **From:** | Thomas, William [William.Thomas@hud.gov] |
| **Sent:** | Tuesday, April 07, 2009 11:54 AM |
| **To:** | Jose Rivera |
| **Subject:** | RE: One Hunters Point & Hunters View |

Could you forward Mr. Lederman's information?

*William J. Thomas*

William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only. If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information. Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions **or as an unofficial staff interpretation** by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24 CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

**From:** Jose Rivera [mailto:jrivera@dagll.com]
**Sent:** Tuesday, April 07, 2009 10:41 AM
**To:** Thomas, William
**Cc:** ledermanb@verizon.net
**Subject:** One Hunters Point & Hunters View

Good morning Mr. Thomas.

I hope all is well.

Thank you for taking the time to speak to us this morning.

If you should have any questions or require any additional information please do not hesitate to contact either Mr. Bruce Lederman or myself.

Thanks again.

Best regards,
Jose

7/27/2009

HP000096

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York  10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website:  www.dagll.com

IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the IRS and other taxing
authorities, we inform you that any tax advice contained in this communication (including any attachments) is
not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be
imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or
matter addressed herein.

---

The information contained in this e-mail message is intended only for the personal and confidential use of the
designated recipients named herein. The message may be an attorney client communication, and as such is
privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error,
and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have
received this communication in error, please notify us immediately by telephone or e-mail and delete the
original message from your system and thereafter confirm its deletion.  Thank you.

HP000097

7/27/2009

**Jose Rivera**

| | |
|---|---|
| **From:** | Jose Rivera |
| **Sent:** | Tuesday, April 07, 2009 10:41 AM |
| **To:** | 'william.thomas@hud.gov' |
| **Cc:** | 'ledermanb@verizon.net' |
| **Subject:** | One Hunters Point & Hunters View |

Good morning Mr. Thomas.

I hope all is well.

Thank you for taking the time to speak to us this morning.

If you should have any questions or require any additional information please do not hesitate to contact either Mr. Bruce Lederman or myself.

Thanks again.

    Best regards,
    Jose

[x] cid:image002.jpg@01C91CC7.5F57A9A0

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York  10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website:  www.dagll.com

IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The information contained in this e-mail message is intended only for the personal and confidential use of the designated recipients named herein. The message may be an attorney client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete the original message from your system and thereafter confirm its deletion.  Thank you.

8/17/2009

HP000098

HP000099

## Jose Rivera

**From:** Jose Rivera
**Sent:** Tuesday, April 07, 2009 12:36 PM
**To:** 'Thomas, William'
**Cc:** 'ledermanb@verizon.net'
**Subject:** RE: One Hunters Point & Hunters View

Here is Mr. Lederman's email address.

Best regards,
Jose



cid:image002.jpg@01C91CC7.5F57A9A0

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York  10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website:  www.dagll.com

IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The information contained in this e-mail message is intended only for the personal and confidential use of the designated recipients named herein. The message may be an attorney client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete the original message from your system and thereafter confirm its deletion.  Thank you.

**From:** Thomas, William [mailto:William.Thomas@hud.gov]
**Sent:** Tuesday, April 07, 2009 11:54 AM
**To:** Jose Rivera

8/13/2009

HP000100

**Subject:** RE: One Hunters Point & Hunters View

Could you forward Mr. Lederman's information?

*William J. Thomas*

William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only.  If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information.  Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions **or as an unofficial staff interpretation** by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24 CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

**From:** Jose Rivera [mailto:jrivera@dagll.com]
**Sent:** Tuesday, April 07, 2009 10:41 AM
**To:** Thomas, William
**Cc:** ledermanb@verizon.net
**Subject:** One Hunters Point & Hunters View

Good morning Mr. Thomas.

I hope all is well.

Thank you for taking the time to speak to us this morning.

If you should have any questions or require any additional information please do not hesitate to contact either Mr. Bruce Lederman or myself.

Thanks again.

    Best regards,
    Jose

[x] cid:image002.jpg@01C91CC7.5F57A9A0

8/13/2009

HP000101

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York 10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website: www.dagll.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The information contained in this e-mail message is intended only for the personal and confidential use of the designated recipients named herein. The message may be an attorney client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete the original message from your system and thereafter confirm its deletion. Thank you.

8/13/2009

HP000102

## Jose Rivera

| | |
|---|---|
| **From:** | Thomas, William [William.Thomas@hud.gov] |
| **Sent:** | Tuesday, April 07, 2009 6:36 PM |
| **To:** | 'ledermanb@verizon.net'; Jose Rivera |
| **Subject:** | ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium I-09-097 and ILS-32438; Borden East River Realty LLC and Simone Development Company LLC; One Hunters Point Condominium; I-09-096 |

Bruce H. Lederman, Esquire, Of Counsel
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, NY 10001
Phone: (212) 564-9800
Fax: (212) 564-9802
e-mail: ledermanb@verizon.net

and

Jose M. Rivera, Esquire, Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, NY 10001
email: jrivera@dagll.com
Phone: (212) 564-9800
Fax: (212) 564-9802

ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium I-09-097

ILS-32438; Borden East River Realty LLC and Simone Development Company LLC;  One Hunters Point Condominium; I-09-096

It was a pleasure talking to you both.  As we discussed, I was out on family emergency yesterday and received your two calls.  As we talked this morning, I briefly scanned your letter.  However, I will be going over your response in the normal course of our review process.

As requested, please find a short synopsis of the complaint process. To reiterate, the process regarding complaints is as follows. The complainant files the complaint with the Department.  There is an acknowledgement of the complaint by the Department and the beginning stages of a preliminary investigation is conducted by the Consumer Protection Compliance Specialist.

As part of the investigation, if the subdivision is not a registered subdivision, a jurisdictional questionnaire is sent to the Developer asking probing questions as to the nature of the sales within the subdivision; the number of lots within the subdivision; the condition and nature of all recreational and the transportation and infrastructure amenities within the subdivision; and details concerning the ownership structure of the Developer and its principals.  If there is a response that the subdivision is exempt from registration with the Department pursuant to a certain statutory or regulatory provision

HP000103

under the Act, if needed, the Developer is asked to supply additional substantiating information pursuant to 24 CFR 1710.4(d). If the subdivision is a registered subdivision, information is obtained regarding the transaction and if necessary other transactions.

Once material is received, reviewed and analyzed by the Specialist, it is evaluated for jurisdictional venue by the Department. If the subdivision is within the jurisdiction of the Department, the complaint is turned into a formal investigation to be conducted in conjunction with the Office of General Counsel. If no Department jurisdictional venue is determined to exist, then notice is given to the complainant and the Developer indicating that the investigation is complete.

Once the investigation is being conducted in conjunction with the Office of General Counsel, the Office of General Counsel makes the determination as to any hearings which may need to be conducted and negotiates any settlement agreements or other remedies appropriate for the public or any other fines, penalties or remedies as determined pursuant to 15 U.S.C. 1717 or 15 U.S.C. 1717a  as well as initiates the prosecution any other administrative or legal action against the Developer.

Please keep in mind that the initial investigative stages could take several months before the Department can begin its full analysis. The Department does not have the authority to act as your client's attorney or to represent your client in a court of law or to make determinations as to local law or regulations. Therefore, if your client is seeking specific information as to the ramifications as to jurisdictional laws or regulations or contract interpretations or other specific relief, then consultation by the complainant with their attorney is necessary. The Act does not contain provisions which preclude the initiation of any other specific relief options with any administrative agency or court of competent jurisdiction during the pendency of the complaint process being handled by the Department.

In our discussions, one of you indicated that one of the exemptions was based on the issuance of a final Certificate of Occupancy. However, upon review of your 3 page letter dated April 2, 2009, you address the certificates as being Temporary Certificates of Occupancy and not final certificates.

The Department has found that there are tremendous issues regarding the closing and occupying the property on a "temporary" occupancy certificate. The Department is aware of the topic as outlined at the following website: http://www.phillipsnizer.com/publications/articles/CertOfOccupSD&BT05-05_art.cfm.

Please address the cases mentioned and how they affect your subdivisions.

The issue is the potential exposure (1) as to open conditions in the temporary certificate and the effect as to the safety of the premises for occupancy;  (2) the escrowing of sufficient funds to satisfy the open conditions in the temporary certificate of occupancy, (3) monitoring the expiration of the temporary certificate of occupancy and requiring the purchaser in the mortgage loan documents to obtain the necessary extension until the final certificate is obtained, and (4) requiring the purchaser to obtain, or cause to be obtained, the final certificate of occupancy prior to expiration of the temporary certificate of occupancy.

Please provide copies as part of the response copies of the Certificate of Occupancies and clarify for the response if you have full Certificates of Occupancy or temporary Certificates of Occupancy.

As requested, you can also follow 24 CFR 1710.14 & 16 as to how to process a Regulatory Exemption Opinion for both subdivisions for review by the Department.  The Regulatory Exemption Opinion can be processed at the same time as this complaint review

The Department's position is that the best thing for a Developer to do is to register a subdivision and to provide a *Property Report* to the purchaser prior to the signing of a contract.  Please see 15 U.S.C. 1704

(a) and 24 CFR 1710.20(a) and 15 U.S.C. §1703(a)(1)(b) and 24 CFR 1710.3 and  24 CFR 1715.20(b).

The exact steps and process involved in filing of a *Statement of Record* are found in 24 CFR 1710.100 *et seq* as well as in 24 CFR 1710.200 *et seq*. For the documents required in response to 24 CFR 1710.209, based upon the Department's review and the requirements for the Paperwork Reduction Act, 44 USC 3506 *et seq* as well as for the ease of the Developer, submit within the submission as much information as possible as to the copies of the required documents on a Compact Disk (CD) as a ".pdf" (Portable Document Format) file. As part of the submission, submit a written index of the path, folder and file names of where the documentation is submitted on the CD within the written response.

*William J. Thomas*
William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only.  If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information.  Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions **or as an unofficial staff interpretation** by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24 CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

## Jose Rivera

| | |
|---|---|
| **From:** | Jose Rivera |
| **Sent:** | Wednesday, April 08, 2009 4:07 PM |
| **To:** | 'casey.Padzius@hud.gov' |
| **Cc:** | 'Thomas, William'; 'ledermanb@verizon.net' |
| **Subject:** | Hunters View ILS-32439 - I-09-097 and One Hunters Point ILS-32438 - I-09-097 |
| **Attachments:** | One Hunters Point Huntersview response.pdf |

Good afternoon Ms. Padzius.

In further of our conversation this morning transmitted herewith is courtesy copy of our cover letter that has been sent to Mr. William J. Thomas of your office.

We will be seeking an exemption order or advisory opinion as to the projects falling under the less than 100 lot exemption based upon a sufficient number of lots being sold as improved property and one being sold to a person for resale purposes and who is in the business to reduce the number of offered "lots: to 98.

We will also be providing a response to Mr. Thomas' request for additional information concerning the Temporary Certificates of Occupancies for the projects.

If there is anything that we can do to assist in expediting determinations of the pending matters please let us know.

Thank you.

Best regards,
Jose

[x] cid:image002.jpg@01C91CC7.5F57A9A0

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York 10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website: www.dagll.com

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

8/14/2009

HP000106

The information contained in this e-mail message is intended only for the personal and confidential use of the designated recipients named herein. The message may be an attorney client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error, and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete the original message from your system and thereafter confirm its deletion. Thank you.

HP000107

8/14/2009

# D'AGOSTINO, LEVINE & LANDESMAN, L.L.P.
*Attorneys At Law*
345 Seventh Avenue • 23rd Floor
New York, New York 10001

212-564-9800
Fax 212-564-9802

JOHN D'AGOSTINO
MICHAEL J. LEVINE*
WAYNE R. LANDESMAN*
BETTINA M. MIRAGLIA✦
JOSE M. RIVERA*
GEORGE TZIMOPOULOS*
_____
KELLYANN S. MONAGHAN
JARED B.VAN VLEET
JONATHAN D. GOTTLIEB*
JARED P. TURMAN*
JULIA L.WACHTER
BROOKE N. ESTREN
ERIC R. GARCIA

COUNSEL
BRUCE H. LEDERMAN*

WRITER'S E-MAIL:
jdagostino@dagll.com

* ALSO ADMITTED IN NJ
✦ ALSO ADMITTED IN CT
• ALSO ADMITTED IN MA

April 2, 2009

**Via Federal Express (202) 708-0502 x. 3006**
Mr. William Thomas
U.S. Department of Housing and Urban Development
Office of RESPA and Interstate Land Sales
451 Seventh Street, SW, Room 9154
Washington, DC  20410

Re:     ILS 32438, Borden East River Realty LLC, 11/49 Realty LLC, and Simone
Development Company, L.L.C., One Hunters Point Condominium; I-09-096,
Hunters View Condominium, I-09-97

Dear Mr. Thomas:

We have been retained by Borden East River Realty LLC ("Borden"), the developer and sponsor of a twelve story high rise condominium project located at 5-49 Borden Avenue, Long Island City, Queens, New York (the "Hunters Point Project") and 11/49 Realty LLC ("11/49"), the developer of a twelve story high rise condominium project located at 48-15 11th Street, Long Island City, Queens, New York (the "Hunters View Project").

We are writing in response to your letter of March 6, 2009 to Borden, 11/49 and Simone Development Company, L.L.C. which seeks information to determine whether the referenced projects should be registered pursuant to the Interstate Land Sales Full Disclosure Act ("ILSFDA") 15 U.S.C. §1701 et. seq.

We enclose our clients' responses to your questionnaire as well as copies of the offering plans, with amendments, for each of the Hunters Point Project and the Hunters View Project, and various additional schedules, organizational information and other information as requested by your letter. This cover letter is submitted to explain in detail why the two projects are exempt from registration and

1

HP000108

Mr. William Thomas
April 2, 2009

disclosure under 15 USC 1702 (b)(1) as a sale or lease of lots in a subdivision containing fewer than one hundred (100) lots.

The analysis set forth below is based upon HUD's Full Disclosure Action Exemptions Supplemental Information to Part 1710, Part V, which provides

> "For example, a developer of a subdivision containing a total of 129 lots since April 28, 1969, qualifies for this exemption if at least 30 lots are sold in transactions that are exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in Sec. 1710.5 (b) through (h) and may be either past or future sales. In the above example, the developer also could qualify if twelve lots had been sold with residential structures already erected on them, nine lots had been sold to building contractors and at least nine lots were reserved for either the construction of homes by the developer or for sales to building contractors. The reserved lots need not be specifically identified."

The Hunters Point Project is an initial offering, pursuant to a duly filed New York State Condominium Offering Plan of one hundred thirty-two (132) residential units, with twenty-six (26) accessory roof terrace units and twenty-five (25) accessory parking space units. Pursuant to Section 5.7(B) of the recorded condominium by-laws, which are also set forth in the filed Offering Plan, the roof terraces and parking spaces "shall only be used ... by Owners and tenants and occupants of the Unit[s]." The by-laws further provide that "Ownership of Roof Terrace Units and Parking Space Units is restricted to the Sponsor and Residential Unit Owners."

Of the one hundred thirty-two (132) residential units in the initial offering plan for the Hunters Point Project, fifty-eight (58) units are not subject to registration and disclosure for the following reasons. On February 17, 2009, a temporary certificate of occupancy (Exhibit A) was issued for the Hunter's Point Project, so that all unsold units at that point in time are exempt pursuant to 15 USC. 1702(a)(2) as sale of improved units. As of February 17, 2009, fifty-seven (57) units which are listed on Exhibit B, were unsold and an additional unit, Unit 2M, was sold on that day (See Exhibit C), so that a total of fifty-eight (58) units were exempt from registration and disclosure. Thus, the total number of lots for purposes of the 15 USC 1702(b)(1) exemption is 74.

The Hunters View Project is an initial offering, pursuant to a duly filed New York State Condominium Offering Plan of seventy-three (73) residential units[1], reduced to seventy-two (72)

---

[1]   Pursuant to the 10th Amendment to the Offering Plan which was accepted for filing by the New York State Department of Law on or about March, 2008, the number of residential units offered was reduced to seventy-two (72) due to the fact that Units 8A and 8B were combined and sold as one Unit 8A/B. The certificate of occupancy for the project is for seventy-two (72) units.  A single contract of sale was executed for combined Unit 8A/B (see Exhibit K).

2

HP000109

Mr. William Thomas
April 2, 2009

residential units, with fifteen (15) accessory roof terrace units and thirty-seven (37) accessory parking units. Pursuant to section 5.7(B) of the recorded condominium by-laws, which are also set forth in the filed Offering Plan, the roof terraces and parking spaces "shall only be used ... by Owners and tenants and occupants of the Unit[s]." The by-laws further provide that "Ownership of Roof Terrace Units and Parking Space Units is restricted to the Sponsor and Residential Unit Owners."

Of the seventy-two (72) residential units in the Hunters View Project, forty-eight (48) are not subject to registration and disclosure for the following reasons. On March 12, 2009, a temporary certificate of occupancy (Exhibit D) was issued for the Hunters View Project so that all unsold units at that point in time are exempt pursuant to 15 USC 1702(a)(2) as sale of improved lots. As of March 12, 2009, forty-seven (47) units, which are listed on Exhibit E, were unsold. In addition, and amongst others[2], Unit 2G had previously been sold to Anthony Martello, who acquired such unit for the purpose of resale or lease and who is engaged in such business (see Exhibit F). Therefore, 2G is exempt under 15 USC 1702(a)(7). As a result, the total number of lots for purposes of qualifying for the 15 USC 1702(b)(1) exemption is twenty-four (24).

Based upon the foregoing information, even assuming arguendo that the two projects are subject to analysis under the common promotions plan provisions of ILSFDA, the two projects generated sales of only ninety (98) lots which are not exempt under 15 USC 1702(a) so that the statutory exemption of 15 USC 1702(b)(1) – sale of fewer than one hundred (100) lots – applies.

Additionally, while we submit it is clear that the two Projects are exempt from registration and disclosure for the reasons set forth above, we also respectfully submit that each Project is exempt from registration and property disclosure based upon the substantial compliance with ILSFDA's disclosure requirements because of the very detailed disclosure provided in the enclosed duly filed New York State Condominium Offering Plans which are provided to all prospective purchasers before any contracts are signed and accepted. As you know, the sale of high rise condominiums in the State of New York is heavily regulated and developers are required to provide the New York State filed Offering Plans and all amendments to purchasers.

Our clients believe they are in compliance with ILSFDA. We hereby request that your office issue a letter confirming that by delivering the enclosed Offering Plans to the Purchasers, on the facts of this case as described above, our clients are subject to the exemption for sale of less than one hundred (100) lots. To the extent that you determine that any issue may exist as to technical compliance, we request an immediate meeting with the appropriate persons to clarify all issues, as well as to discuss all necessary and appropriate actions that may be necessary to comply with your office's requirements.

As of this date, five (5) purchasers have commenced lawsuits against our clients in the Eastern District of New York seeking to rescind their purchase agreements, alleging technical violations of ILSFDA, failure to register and failure to provide a property report. The purchasers have also filed

---

[2]   Numerous purchasers filled out initial information forms indicating that they were purchasing units for investment purposes. All rights are reserved with respect thereto.

3

HP000110

Mr. William Thomas
April 2, 2009

complaints with the New York Attorney General (see, e.g., Exhibit G). The pending federal actions are filed by an attorney who is presently advertising on an internet site called "no-condo.com," which states:

> "The downturn of the real estate market has led purchasers (like you) to reevaluate their once promising condominium/real estate purchases. If you seek to get out of your purchase of a condominium unit or other real estate purchase, contact us today."

None of the complaints filed have any allegations of fraud or inadequate disclosure. Rather, the complaints (which we believe prompted your inquiry) are an obvious and transparent attempt to exploit or manufacture a perceived technical violation of ILSFDA as a basis for avoiding contracts because of current economic conditions or to create leverage to obtain price concessions from our clients, rather than any bona fide claims of a lack of disclosure.

While we and our client fully appreciate the need for compliance with ILSFDA, we also submit that its use as a weapon to avoid contractual obligations unrelated to any claimed lack of disclosure undermines the purposes of ILSFDA, and the mission of "HUD" in general. If purchasers are permitted to use a "full disclosure act" to avoid negotiated contracts where there are no actual claims of fraudulent disclosure or lack of disclosure, none of the stated purposes of the Act are advanced. Indeed, given current declines in property values, permitting avoidance of contracts unrelated to any actual fraud could lead to outright project failure and bankruptcy, unfairly harming purchasers who have already closed and expect to live in the completed and occupied projects. At a time when our country's leadership is struggling to stabilize financial and real estate markets, we submit it is important for HUD to exercise its regulatory powers wisely to prevent further destabilization of markets by allowing purchasers to avoid contracts where there has been compliance or at a minimum, substantial compliance with the applicable laws.

We look forward to working with you to resolve the issues that prompted your inquiry and confirm that our client is in full compliance with ILSFDA

Very truly yours,

D'AGOSTINO, LEVINE & LANDESMAN, L.L.P.

By: _____
John D'Agostino

4

HP000111

RESPONSE TO REQUEST FOR INFORMATION

1.     The Hunters Point Project is an initial offering, pursuant to a duly filed New York State Condominium Offering Plan of one hundred thirty-two (132) residential units, with twenty-six (26) accessory roof terrace units and twenty-five (25) accessory parking space units. Pursuant Section 5.7(B) of the recorded condominium by-laws, which are also set forth in the filed Offering Plan, the roof terraces and parking spaces "shall only be used ... by Owners and tenants and occupants of the Unit[s]." The by-laws further provide that "Ownership of Roof Terrace Units and Parking Space Units is restricted to the Sponsor and Residential Unit Owners."

Of the one hundred thirty-two (132) residential units in the initial offering plan for the Hunters Point Project, fifty-eight (58) units are not subject to registration and disclosure for the following reasons. On February 17, 2009, a temporary certificate of occupancy (Exhibit A) was issued for the Hunter's Point Project, so that all unsold units at that point in time are exempt pursuant to 15 USC. 1702(a)(2) as sale of improved units. As of February 17, 2009, fifty-seven (57) units which are listed on Exhibit B, were unsold and an additional unit, Unit 2M, was sold on that day (See Exhibit C), so that a total of fifty-eight (58) units were exempt from registration and disclosure. Thus, the total number of lots for purposes of the 15 USC 1702(b)(1) exemption is 74.

The Hunters View Project is an initial offering, pursuant to a duly filed New York State Condominium Offering Plan of seventy-three (73) residential units[1], reduced to seventy-two (72) residential units, with fifteen (15) accessory roof terrace units and thirty-seven (37) accessory parking units. Pursuant to section 5.7(B) of the recorded condominium by-laws, which are also set forth in the filed Offering Plan, the roof terraces and parking spaces "shall only be used ... by Owners and tenants and occupants of the Unit[s]." The by-laws further provide that "Ownership of Roof Terrace Units and Parking Space Units is restricted to the Sponsor and Residential Unit Owners."

Of the seventy-two (72) residential units in the Hunters View Project, forty-eight (48) are not subject to registration and disclosure for the following reasons. On March 12, 2009, a temporary certificate of occupancy (Exhibit D) was issued for the Hunters View Project so that all unsold units at that point in time are exempt pursuant to 15 USC 1702(a)(2) as sale of improved lots. As of March 12, 2009, forty-seven (47) units, which are listed on Exhibit E, were

---

[1]    Pursuant to the 10th Amendment to the Offering Plan which was accepted for filing by the New York State Department of Law on or about March, 2008, the number of residential units offered was reduced to seventy-two (72) due to the fact that Units 8A and 8B were combined and sold as one Unit 8A/B. The certificate of occupancy for the project is for seventy-two (72) units. A single contract of sale was executed for combined Unit 8A/B (see Exhibit K).

5

unsold.   In addition, and amongst others[2], Unit 2G had previously been sold to Anthony Martello, who acquired such unit for the purpose of resale or lease and who is engaged in such business (see Exhibit F). Therefore, 2G is exempt under 15 USC 1702(a)(7). As a result, the total number of lots for purposes of qualifying for the 15 USC 1702(b)(1) exemption is twenty-four (24).

2.      See response 1 above.

3.      YES.  Borden East River Realty, LLC is the developer of the One Hunters Point Project and 11/49 Realty LLC is the developer of the Hunters View Project.

4.      YES.  After June 20, 1980, more than twelve (12) lots have been sold in any twelve (12) month period

5.      YES.  The Combined Projects consist of condominium units all of which are smaller than 20 acres.

6.      A small number of sales were made to individuals who provided addresses out of state.  The developers do not solicit information as to actual legal residence of purchasers. However, any sale to an individual who had an out-of-state address was initiated by said purchaser's visit to the sales office adjacent to the project. In the limited instances where purchasers used out-of-state addresses, it is believed that they also had New York addresses and/or were purchasing for family members in New York (e.g., out-of-state parents purchasing for children living in New York).

7.      All lots (i.e. condominiums located in these high rise buildings) are sold with utilities.

8.      YES.

9.      As of this date the developer has identified at least one (1) lot, Hunters View Project Unit 2G, which was sold to Anthony Martello, who acquired such unit for the purpose of resale or lease and who is engaged in such business (see Exhibit F).  Numerous purchasers filled out initial information forms indicating that they were purchasing units for investment purposes.  All rights are reserved with respect thereto.

10.     No lots are sold to a government or a governmental agency.

11.     One lot, Unit 2M at the Hunter's Point Project, was sold as an existing condominium unit with a valid certificate of occupancy on it.  Additionally, fifty-seven (57) Units at the Hunters Point Project and forty-seven (47) Units at the Hunters View Project have not been sold and are

---

[2]  Numerous purchasers filled out initial information forms indicating that they were purchasing units for investment purposes. All rights are reserved with respect thereto.

6

HP000113

presently being offered for sale as improved condominium units with valid certificates of occupancy.

12. All lots are single family residences.

13. Sales are handled through an Independent Selling Agent, who, upon information and belief, may use the mails.

14. Collection of downpayments is done through developers' attorneys, and upon information and belief, some purchasers may have delivered payments through the mail.

* * *

1. At present there are fifty-seven (57) unsold units in the Hunters Point Project and forty-seven (47) unsold units in the Hunters View Project.

2. All unsold units are owned by the developers.

3. Not applicable – there are presently unsold units.

4. All lots are condominium units.

5. One (1) lot, Unit 2G, in the Hunters Point Project, had a completed residential condominium at the time of sale.

6. One (1) lot, Hunters View Project Unit 2G, was sold to Anthony Martello, who acquired such unit for the purpose of resale or lease and is engaged in such business (see Exhibit F).

7. No contracts obligate seller to complete a condominium within two years.

8. New York City Public Roads provide access to each of the projects.

9. Not applicable – see Answer 8 immediately above.

10. Not applicable – see Answer 8 immediately above.

11. All units have utility services provided by Con Edison. Water to all units is provided by the City of New York.

12. All units have utility services provided by Con Edison. Water to all units is provided by the City of New York.

13. Not applicable.  All units have utility services provided by Con Edison. Water to all units is provided by the City of New York.

7

HP000114

14. See the organizational charts attached hereto as Exhibit H.  See also the section in Part I of each Offering Plan titled "Identity of Parties."

15. The Hunters Point Project and the Hunters View Project are not contiguous but are in the same geographic area.  No other holdings are in this geographic area.  See also the section in Part I of each Offering Plan titled "Identity of Parties."

16. None.

17. The relevant geographic market is in New York City and Long Island, New York.

18. The developers do not maintain records of the legal residences of purchasers.  A list for each project showing mailing addresses at the time of contract and current mailing addresses is attached. However, any sale to an individual who had an out-of-town address was initiated by said purchaser's visit to the sales office adjacent to the project.  In the limited instances where purchasers used out-of-state addresses, it is believed that they also had New York addresses and/or were purchasing for family members in New York (e.g., out-of-state parents purchasing for children living in New York).

19. A copy of sales promotional package is enclosed as Exhibit I and J.

20. A copy of sales promotional package is enclosed as Exhibit I and J.

21. No installment contracts are used in connection with either project.

22. Not applicable.

23. Sales are handled through an independent Selling Agent, who, upon information and belief, may use telephone to answer inquiries.

24. Attached as part of Exhibits I and J are advertisements in various newspapers or periodicals used to advertise each of the projects.  No radio or television ads were utilized.

25. www.Hunterspointcondos.com

I HEREBY AFFIRM that I am the developer of the lots herein described, or will be the developer at the time the lots are offered for sale or lease to the public, or that I am an agent authorized by such developer to respond to this letter of inquiry and that the statements contained herein, together with any documents submitted herewith, are full, true and complete.

Joseph Simone, as manager of Simone Borden LLC, the manager of Borden East River Realty LLC and manager of 11/49 Realty LLC

8

G:\Tzimopoulos\Simone\HUD letter [7].doc

HP000115

## Jose Rivera

**From:** Thomas, William [William.Thomas@hud.gov]
**Sent:** Wednesday, April 08, 2009 4:32 PM
**To:** Jose Rivera
**Subject:** ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium; I-09-097 and ILS-32438; Borden East River Realty LLC and Simone Development Company LLC; One Hunters Point Condominium; I-09-096

Jose M. Rivera, Esquire, Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue, 23rd Floor
New York NY 10001
(212) 564-9800 Ext. 414
Fax (212) 564-9802
email: jrivera@dagll.com

Thank you for your call and concerns. In our discussion, we discussed your response and the differences between registering a subdivision and the filing of a *Statement of Record* which is governed by 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) and the requesting a *Regulatory Exemption Opinion* 24 CFR 1710.14 & 16 and *Advisory Opinion* 24 CFR.1710.17.

You also indicated that in providing your client's amended response you will be include information as to the differences of and what consists in a final Certificate of Occupancy and Temporary Certificate of Occupancy and the assurances of completions to protect the purchasers which are contained therein.

I look forward to receiving your information. Let me know when you send the documentation so that I can be on the lookout for the information.

*William J. Thomas*

William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only. If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information. Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions **or as an unofficial staff interpretation** by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24*

HP000116

*CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

**From:** Jose Rivera [mailto:jrivera@dagll.com]
**Sent:** Wednesday, April 08, 2009 4:07 PM
**To:** casey.Padzius@hud.gov
**Cc:** Thomas, William; ledermanb@verizon.net
**Subject:** Hunters View ILS-32439 - I-09-097 and One Hunters Point ILS-32438 - I-09-097

Good afternoon Ms. Padzius.

In further of our conversation this morning transmitted herewith is courtesy copy of our cover letter that has been sent to Mr. William J. Thomas of your office.

We will be seeking an exemption order or advisory opinion as to the projects falling under the less than 100 lot exemption based upon a sufficient number of lots being sold as improved property and one being sold to a person for resale purposes and who is in the business to reduce the number of offered "lots: to 98.

We will also be providing a response to Mr. Thomas' request for additional information concerning the Temporary Certificates of Occupancies for the projects.

If there is anything that we can do to assist in expediting determinations of the pending matters please let us know.

Thank you.

> Best regards,
> Jose

☒ cid:image002.jpg@01C91CC7.5F57A9A0

Jose M. Rivera, Esq., Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue
23rd Floor
New York, New York  10001
email: jrivera@dagll.com
(212) 564-9800 Ext. 414 Fax (212) 564-9802

Website:  www.dagll.com

IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the IRS and other taxing authorities, we inform you that any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties that may be imposed on any taxpayer or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

The information contained in this e-mail message is intended only for the personal and confidential use of the designated recipients named herein. The message may be an attorney client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this e-mail in error,

7/27/2009

HP000117

and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone or e-mail and delete the original message from your system and thereafter confirm its deletion.  Thank you.

HP000118

7/27/2009

## Jose Rivera

| | |
|---|---|
| **From:** | Thomas, William [William.Thomas@hud.gov] |
| **Sent:** | Thursday, April 16, 2009 9:03 AM |
| **To:** | Jose Rivera |
| **Subject:** | ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium; I-09-097ILS-32438 and Borden East River Realty LLC and Simone Development Company LLC; One Hunters Point Condominium; I-09-096 |

Jose M Rivera, Esquire, Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue, 23rd Floor
New York NY 10001
(212) 564-9800 Ext. 414
Fax (212) 564-9802
email: jrivera@dagll.com

This confirms our conversation from 04-15-09 notifying that only one check was received for an Advisory Opinion. Since there were two Developments, the Department needs two checks. See the mandated fee schedule pursuant to 24 CFR 1710.35(c). You indicated that client will send check on or about 4-17-09 for One Hunters Point.

*William J. Thomas*

William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only. If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information. Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions **or as an unofficial staff interpretation** by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24 CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

HP000119

7/27/2009

## Jose Rivera

| | |
|---|---|
| **From:** | Thomas, William [William.Thomas@hud.gov] |
| **Sent:** | Monday, April 20, 2009 3:35 PM |
| **To:** | Jose Rivera |
| **Subject:** | ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium; I-09-097 and ILS-32438 and Borden East River Realty LLC and Simone Development Company LLC; One Hunters Point Condominium; I-09-096 |

Jose M Rivera, Esquire, Partner
D'Agostino, Levine & Landesman, L.L.P.
345 Seventh Avenue, 23rd Floor
New York NY 10001
(212) 564-9800 Ext. 414
Fax (212) 564-9802
email: jrivera@dagll.com

ILS-32439; 11/49 Realty LLC and Simone Development Company LLC; Hunters View Condominium; I-09-097

ILS-32438 and Borden East River Realty LLC and Simone Development Company LLC; One Hunters Point Condominium; I-09-096

Instead of sending a formal deficiency, based upon our mutual working together in the last several weeks, this e-mail is being sent to offer the ability to modify the responses to the complaints filed as well as to modify the requests for Advisory Opinions.

## RESPONSE AS TO THE COMPLAINTS

In my cursory review the documentation regarding the complaints, I did not see any mention of the news releases being used on the website as advertising materials. Please address these materials in your response.

Also, in the narration, the issue as to common promotional plan was given an almost off-hand treatment. Based on the information provided, these two developments have been marketed under one common promotional plan.

Next, the discussion within the provided explanation addresses what is happening as of the date when the jurisdictional questionnaire was received in 2009. However, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. 1701 *et seq*, (the "Act") applies as of the date of the first offering of sale. The date when the Public Offering Statement was approved by New York should be the point of beginning in the attempt to defend a failure to register a subdivision and file a Statement of Record pursuant to 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) based upon an exemption.

24 CFR 1701.4(d) does indicate that the eligibility for exemptions available under §§1710.5 through 1710.14 is self-determining. With the exception of the exemptions available under §§1710.15 and 1710.16, a Developer is not required to file notice with or obtain the approval of the Secretary in order to take advantage of an exemption. If a Developer does elect to take advantage of an exemption, the Developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met.

7/27/2009

HP000120

In complying with the providing of material pursuant to 24 CFR 1701.4(d) there is no prescribed format for submitting this information. The Developer should at least cite in a comprehensive statement and by description the applicable statutory or regulatory basis for the exemption or lack of jurisdiction and thoroughly explain how the sale of the lots or condominium units either satisfies the requirements for exemption or falls outside the purview of the Act at the time of the first offering of sale to the public.

Also, as supporting documentation, the following documentation should also be provided for review: (1) a copy of the recorded plat of the entire subdivision (if one is not recorded and unrecorded one is acceptable) or condominium with the lots or units subject to the exemption request delineated thereon; (2) a sample copy of the contract and sample Deed used for conveyances to purchasers; (3) a clear and specific statement detailing how the proposed sales of lots or units subject to the exemption substantially complies with the available exemption provisions; (4) a description of the method by which the lots have been and will be promoted and to which population centers the promotion has been and will be directed; (5) a copy of the Declaration of Condominium, By-Laws, and Amendments (if recorded, provide copies of the recorded documents); (6) a copy of the Offering Plan or Offering Statement if required by the local jurisdiction; and (7) a statement and evidence showing how sales which have occurred have complied with the anti-fraud provisions of 24 CFR 1710.4 (b) and (c).

In your responses as contained in your April 2, 2009 response to the Department's jurisdictional questionnaire dated March 6, 2009, as well as the supplemental material provided in your letter dated April 13, 2009, the vast majority of information needed for the Department to make a determination regarding the complaints was provided. However, what was lacking was a clear and specific statement detailing how each development was able to be exempt in the first place and how all of the sales of units within the condominium (both past and future) substantially complied with the available exemption provisions.

Further, Answer 14 of Part II of the questionnaire was not fully or properly responded to. For each of the developments, list the full names, mailing addresses (both physical and e-mail), and telephone numbers (both voice and fax) of each person, partnership, corporation or entity owning a 10% or greater interest in the subdivision. Include all principals as defined under 24 CFR 1710.1. Please amend your response to include the requested information in a logical order without having to refer to exhibits, annotations or other material.

Based upon items discovered in the researching of the material provided for each of the two developments, the Offering Plans presented for both projects did not contain the Exhibit B to the Declaration which would have defined the Units being created. Based upon the information contained within the Declarations, the Parking Units and the Roof Terrace Units appear to be defined within the Declaration as full Units and not simply as general or limited common elements or divided interests which are assigned or licensed to specific parties. The Roof Terrace Units and the Parking Units appear to be separate conveyable Units as defined under 24 CFR 1710.1. Please proved a copy from the local land Records of the recorded Declarations for both Hunters View Condominium and One Hunters Point Condominium as part of your amended response for the Department's further analysis.

### One Hunters Point Condominium

This original 132 Residential Unit with 26 Roof Terrace Units and 25 Parking Units condominium project was approved for Offering by the State of New York on September 11, 2007. Therefore, September 11, 2007 is the date where the analysis for One Hunters Point Condominium should begin in an attempt to defend a failure to register a subdivision and file a Statement of Record pursuant to 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) based upon an exemption. Also, if the project was to be registered there would have been failures to provide a Property Report pursuant to 15 U.S.C. §1703(a)

HP000121

(1)(b) and 24 CFR 1710.3 which would then have a result of conducting an unlawful sales practice pursuant to 24 CFR 1715.20(b).

*Hunters View Condominium*

This original 73 Residential Unit with 15 Roof Terrace Units and 37 Parking Units condominium project was approved for Offering by the State of New York on September 11, 2007. Therefore, September 11, 2007 is the date where the analysis for One Hunters Point Condominium should begin in an attempt to defend a failure to register a subdivision and file a Statement of Record pursuant to 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) based upon an exemption. Also, if the project was to be registered there would have been failures to provide a Property Report pursuant to 15 U.S.C. §1703(a)(1)(b) and 24 CFR 1710.3 which would then have a result of conducting an unlawful sales practice pursuant to 24 CFR 1715.20(b).

Deciding if the inclusion of all of the Units within Hunters View Condominium in the need for registration with the Department would be primarily based upon a common promotional plan. Based upon the information gathered prior to the sending of the jurisdictional questionnaire, there was a strong indication that such a plan was in existence. Please provide the full name and location of the sales broker and/or location of the sales office. If the sales staff are employees or independent contractors of the Developer, please indicate so. Also, if there is a rationale for the exemption of this development from the count toward registration, the response should adequately address the issue.

Please amend your responses as to both developments accordingly. For ease, break up the response and provide a separate response for each development separately.

## REQUEST FOR ADVISORY OPINIONS

24CFR 1710.17(b)(2) mandates that the Developer provide a comprehensive description of the conditions and operations of the offering. Despite there being no prescribed format for submitting this information, the Developer should at least cite the applicable statutory or regulatory basis for the exemption or lack of jurisdiction and thoroughly explain how the offering either satisfies the requirements for exemption or falls outside the purview of the Act.

Since two Advisory Opinions are needed, **a separate *Comprehensive Statement*** should be provided for each of the projects. Each project was approved for Offering by the State of New York on September 11, 2007. Therefore, September 11, 2007 is the date where the analysis for each *Comprehensive Statement* should begin and be the date any claimed exemption would have been first applicable.

As to supporting documentation, since a plat of the entire condominium subdivision with the Units subject to the exemption request delineated thereon and a copy of the contract to be used for Unit sales was provided within the Public Offering Statement within the response material for the complaints There is no need to supply them for the Advisory Opinion file.

Besides citing the applicable statutory or regulatory basis for the exemption or lack of jurisdiction and thoroughly explaining how each the offerings in both condominium subdivisions either satisfies the requirements for exemption or falls outside the purview of the Act, provide within each *Comprehensive Statement* a clear and specific statement *detailing* exactly how the sales of past units and the sales of future units subject to the exemption request substantially complies with one of the available exemption provisions. Also, provide within each *Comprehensive Statement* a description of the method by which the units have been and will be promoted and to which population centers the promotion has been and will be directed. Also, provide within each *Comprehensive Statement* how both past unit sales complied

7/27/2009

HP000122

with and how future sales will comply with the anti-fraud provisions of 24 CFR § 710.4 (b) and (c).

You can mail the requested documentation to me at the following address:

> Office of RESPA/Interstate Land Sales
> Department of Housing and Urban Development
> Room 9154
> 451 7th Street SW
> Washington DC 20410

Please provide the requested information to the undersigned within 20 days of the receipt of this letter.

As to the complaints, upon receipt of your information, I will contact you should I need further information or upon the completion of my investigation.

By way of reply, please confirm receipt of this e-mail.

You can call me, William J. Thomas, on (202) 402-3006 if you have questions.   My e-mail address is william.thomas@hud.gov.


*William J. Thomas*

William J. Thomas, MBA, Certified Paralegal
*Consumer Protection Compliance Specialist*
Office of RESPA/Interstate Land Sales
Department of Housing and Urban Development
Room 9154
451 7th Street SW
Washington DC 20410
Phone: 202-402-3006
Fax: 202-708-4559

*WARNING: Any reply e-mail to this message will be sent through a United States Government e-mail system. No expectation of privacy should be expected of information transmitted through this system. This message is intended for designated recipients only.  If you have received this message in error, please delete the original and all copies and notify the sender immediately as to any errors in delivery. Federal law prohibits the disclosure or other use of this information.  Please note that any information contained herein is to be considered as advice of a general nature as to the preparation of a filing and/or as a response to an informal inquiry or request for information or as a response to informal discussions or as an unofficial staff interpretation by the Office of RESPA/Interstate Land Sales staff pursuant to 24 CFR §1720-35 and is not deemed to be a formal advisory opinion as described under 24 CFR §1710-17 and does not provide any additional protection as that which may be afforded if an official advisory opinion was obtained.*

HP000123

7/27/2009

# D'AGOSTINO, LEVINE & LANDESMAN, L.L.P.

*Attorneys At Law*

Mr. William Thomas
April 13, 2009

345 Seventh Avenue • 23rd Floor
New York, New York 10001

212-564-9800
Fax 212-564-9802

JOHN D'AGOSTINO
MICHAEL J. LEVINE*
WAYNE R. LANDESMAN*
BETTINA M. MIRAGLIA•
JOSE M. RIVERA*
GEORGE TZIMOPOULOS•

COUNSEL
BRUCE H. LEDERMAN*

KELLYANN S. MONAGHAN
JARED B. VAN VLEET
JONATHAN D. GOTTLIEB*
JULIA L. WACHTER
BROOKE N. ESTREN
ERIC R. GARCIA

WRITER'S E-MAIL:

* ALSO ADMITTED IN NJ
• ALSO ADMITTED IN CT
• ALSO ADMITTED IN MA

jdagostino@dagll.com

April 13, 2009

<u>Via Federal Express (202) 708-0502 x. 3006</u>
Mr. William Thomas
U.S. Department of Housing and Urban Development
Office of RESPA and Interstate Land Sales
451 Seventh Street, SW, Room 9154
Washington, DC 20410

Re:    ILS 32438 and ILS 32439, Borden East River Realty LLC ("Borden"),
11/49 Realty LLC ("11/49"), (collectively Borden and 11/49 are referred
to as the "Developers")and Simone Development Company L.L.C., One
Hunters Point Condominium ("Hunters Point"); I-09-096, Hunters View
Condominium, ("Hunters View") I-09-97 (collectively the "Projects")

Dear Mr. Thomas:

As you know we are counsel to Borden and 11/49.

We are hereby responding to your request, via email dated April 7, 2009, regarding the status of
the certificates of occupancy for the Projects.

Please note that the Developers have obtained a temporary certificate of occupancy ("T C of O")
as issued by the New York City Department of Buildings ("DOB") for both Projects. See annexed hereto
as Exhibit A copies of: the T C of O Number 402115661T002, effective as of April 8, 2009 and expiring

HP000124

Mr. William Thomas
April 13, 2009

June 7, 2009, inclusive of all residential units at Hunters Point; and the initial T C of O Number 402115661T001, effective February 17, 2009, issued for the Hunters Point project. Also, see annexed hereto as Exhibit B a copy of the T C of O Number 402437065T001, effective March 12, 2009, expiring June 10, 2009 and issued for the Hunters View project.

The current T C of O for Hunters Point shows twenty-five (25) outstanding requirements which must be addressed prior to the DOB issuing the permanent certificate of occupancy ("P C of O"). See a copy of a printout from the DOB website annexed hereto as Exhibit C detailing the twenty-five (25) outstanding requirements. It is the obligation of Borden, as set forth in the Hunters Point offering plan, to renew the T C of O as required and ultimately obtain the P C of O. See a copy of the relevant section of the Hunters Point offering plan which is annexed hereto as Exhibit D. In addition, pursuant to the terms of the offering plan, Borden has placed in escrow $300,000 ( See Exhibit E) with its condominium attorneys which is the amount reasonably needed to complete the outstanding work required, as certified to by NDG Architect, P.C. ("NDG"), to obtain the P C of O for the Hunters Point project. See a copy of NDG's certification, dated March 5, 2009 which is annexed to NDG's letter which is annexed hereto as Exhibit I.

The current T C of O for Hunters View shows twenty-four (24) outstanding requirements which must be addressed prior to the DOB issuing the P C of O. See a copy of a printout from the DOB website, annexed hereto as Exhibit F, detailing the twenty-four (24) outstanding requirements. It is the obligation of 11/49, as set forth in the Hunters View offering plan, to renew the T C of O as required and ultimately obtain the P C of O. See a copy of the relevant section of the Hunters View offering plan which is annexed hereto as Exhibit G. In addition, pursuant to the terms of the offering plan, 11/49 has placed in escrow $ 110,000 ( See Exhibit H) with its condominium attorneys which is the amount reasonably needed to complete the outstanding work required, as certified to by NDG, to obtain the P C of O for the Hunters View project. See a copy of NDG's certification dated March 19, 2009 which is annexed to NDG's letter annexed hereto as Exhibit I.

Regarding your concern about the safety of the premises for occupancy, the issuance of the T C of O indicates that the premises are physically habitable for their intended use and may legally be occupied. Please see a copy of NDA's letter which is annexed hereto as Exhibit I for verification.

Should you require any additional information please call.

Very truly yours,

D'AGOSTINO, LEVINE & LANDESMAN, L.L.P.

By: _____
John D Agostino