WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys at Law
90 Woodbridge Center Drive
Post Office Box 10
Woodbridge, New Jersey  07095
(732) 636-8000
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

DANIEL ROMERO and JOANN RAGUSA,

                        *Plaintiffs,*

          -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

                        *Defendants.*

------------------------------------------------------------X

WILLIAM LEE and SZUYU PAN,

                        *Plaintiffs,*

          -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

                        *Defendants.*

------------------------------------------------------------X

KYUNG YEOL SHIN,

                        *Plaintiff,*

          -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

                        *Defendants.*

------------------------------------------------------------X

LORA KAYE,

                        *Plaintiff,*

          -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

                        *Defendants.*

------------------------------------------------------------X

Civ. No.: 09 Civ. 665 (ARR)

**PLAINTIFFS' BRIEF IN
SUPPORT OF THEIR MOTION
FOR PARTIAL SUMMARY
JUDGMENT AGAINST
DEFENDANT, BORDEN EAST
RIVER REALTY LLC ONLY**

Civ. No.: 09 Civ. 1721 (ARR)

Civ. No.: 09 Civ. 845 (ARR)

Civ. No.: 09 Civ. 1228 (ARR)

#3234342 (153641.001)

```
-------------------------------------------------------------X
JOHN GAENZLER and SARA MOSCOSO-            :
GAENZLER,                                   :
                                            :
                    Plaintiffs,             :
                                            :   Civ. No.: 09 Civ. 1303 (ARR)
      -against-                             :
                                            :
BORDEN EAST RIVER REALTY LLC and            :
JOSEPH SIMONE,                              :
                                            :
                    Defendants.             :
-------------------------------------------------------------X
ANTHONY ALLICINO,                           :
                                            :
                    Plaintiff,              :
                                            :
      -against-                             :   Civ. No.: 09 Civ. 1455 (ARR)
                                            :
BORDEN EAST RIVER REALTY LLC and            :
JOSEPH SIMONE,                              :
                                            :
                    Defendants.             :
-------------------------------------------------------------X
JULIE and DAVID LIEVRE,                     :
                                            :
                    Plaintiffs,             :
                                            :
      -against-                             :   Civ. No.: 09 Civ. 1984 (ARR)
                                            :
BORDEN EAST RIVER REALTY LLC and            :
JOSEPH SIMONE,                              :
                                            :
                    Defendants.             :
-------------------------------------------------------------X
ZACK FERGUSON-STEGER,                       :
                                            :
                    Plaintiff,              :
                                            :
      -against-                             :   Civ. No.: 09 Civ. 1196 (ARR)
                                            :
BORDEN EAST RIVER REALTY LLC and            :
JOSEPH SIMONE,                              :
                                            :
                    Defendants.             :
-------------------------------------------------------------X
```

#3234342 (153641.001)

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF UNDISPUTED MATERIAL FACTS................................................3

LEGAL ARGUMENT...............................................................................................7

POINT I ...................................................................................................................7

STANDARD OF REVIEW UNDER F.R.C.P. 56 .....................................................7

POINT II ..................................................................................................................8

    ILSA'S BROAD SCOPE AND APPLICATION TO THE
CONDOMINIUM....................................................................................................8

        A.    The Purpose of ILSA – Broad Coverage. ...................................8

        B.    It is Well Settled that ILSA Applies to Condominiums. ........10

        C.    Hunters Point Required To Comply With ILSA.....................11

POINT III.................................................................................................................11

    BORDEN EAST FAILED TO COMPLY WITH ILSA ...............................11

POINT IV.................................................................................................................12

    BORDEN EAST IS NOT EXEMPT FROM ILSA AS A MATTER OF
LAW BECAUSE NO EXEMPTION EXISTED AT THE TIME THE
PLAINTIFFS' CONTRACTS WERE EXECUTED.......................................12

        A.    Exemptions Are To Be Narrowly Construed.........................13

        B.    A Developer's Compliance With ILSA Is Measured When
Purchaser Executes The Purchase Agreement.......................14

        C.    ILSA and Case Law Interpreting it Repudiate Defendants'
Scheme to be Exempt from ILSA .........................................15

POINT V ..................................................................................................................18

    DEFENDANTS' PIGGYBACKING DEFENSE SERVES NO
LEGITIMATE BUSINESS PURPOSE AND WAS ONLY ASSERTED
TO EVADE THE REQUIREMENTS OF ILSA...........................................18

POINT VI..................................................................................................................................21

    HUD'S JULY 17, 2009 ADVISORY OPINION SHOULD BE GIVEN
    NO WEIGHT..................................................................................................................21

POINT VII .............................................................................................................................25

    DEFENDANTS' ASSERTED EQUITABLE DEFENSES ARE
    IRRELEVANT AND INADEQUATE AS A MATTER OF LAW ..............................25

POINT VIII............................................................................................................................27

    THE CONDOMINIUM'S ROOF TERRACE UNITS AND PARKING
    UNITS SHOULD BE COUNTED TOWARDS THE FEWER THAN 100
    LOT EXEMPTION, 15 U.S.C. § 1702(b)(1)...............................................................27

CONCLUSION.......................................................................................................................31

## TABLE OF AUTHORITIES

PAGE

### CASES

200 East Partners LLC v. Gold,
   997 So. 2d 466 (Fla. 4th DCA 2008) .................................................................................. passim

Ahn v. Merrifield Town Center Limited Partnership,
   584 F. Supp. 2d 848 (E.D. Vir. 2008) ............................................................................... passim

Anderson v. Liberty Lobby,
   477 U.S. 242 (1986) ...................................................................................................... 7

Appalachian, Inc. v. Olson,
   468 So. 2d 266 (Fla. App. 2d Dist. 1985)............................................................................ 26

Bair v. Atlantis LLC,
   2008 WL 5051398 (W.D. Mo. Nov. 20, 2008) ............................................................... 13, 17

Beauford v. Helmsley,
   740 F. Supp. 201 (S.D.N.Y. 1990) .................................................................................. 10

Bettis v. Lakeland, Inc.,
   402 F. Supp. 1300 (E.D. Tenn. 1975) ............................................................................... 26

DeLuz Roanchos Inv. Ltd. v. Coldwell Banker & Co.,
   608 F.2d 1297 (9th Cir. 1979).......................................................................................... 13

Dorchester Development, Inc. v. Burk,
   439 F.2d 1033 (Fla. 3d DCA 1983)................................................................................... 9

Flint Ridge Dev. Co. v. Scenic Rivers Ass'n,
   426 U.S. 776 (1976) ...................................................................................................... 9

Gall v. Prudential Residential Servs., Ltd. Partnership,
   22 F.3d 1219 (2d Cir. 1994) ........................................................................................... 7

Gentry v. Harborage Cottages-Stuart, LLLP,
   602 F .Supp.2d 1239 (S.D. Fla. 2009)........................................................................ 13, 18, 19

Giralt v. Vail Village Inn Associates,
   759 P.2d 801 (Colo. Ct. App. 1988)............................................................................. 10, 29

Goenaga v. March of Dimes Birth Defects Found.,
   51 F.3d 14 (2d Cir. 1995) .............................................................................................. 7

Grove Towers, Inc. v. Lopez,
    467 So.2d 358, review denied 480 So.2d 1294 (Fla. App. 3d Dist. 1985)............. 14, 16, 17, 20

Husted v. Amrep Corporation,
    429 F. Supp. 298 (S.D.N.Y. 1977) ........................................................................... 9

In re Paramount Lake Eaola LP Litig.,
    2009 U.S. Dist. LEXIS 78643 (M.D. Fla. Aug. 17, 2009) ....................................... 10

LaFond v. General Physics Servs. Corp.,
    50 F.3d 165 (2d Cir. 1995) ........................................................................................ 7

Law v. Royal Palm Beach Colony, Inc.,
    578 F.2d 98 (5th Cir. 1978) ....................................................................................... 5

Markowitz v. Northeast Land Company,
    906 F.2d 100 (3d Cir. 1990) ..................................................................................... 10

McCown v. Heidler,
    527 F.2d 204 (10th Cir. 1975) ................................................................................... 9

N & C Properties v. Pritchard,
    525 So. 2d 1346 (Ala. 1988), cert. denied, 488 U.S. 856 (1988) ............................. 13

Nargiz v. Henlopen Developers,
    388 2d 1362 (Del. 1977)............................................................................................ 10

Neratko v. Frank,
    31 F. Supp. 2d 270 (W.D.N.Y. 1998)......................................................................... 7

Olsen v. Lake Country,
    955 F.2d 203 (4th Cir. 1991) ........................................................................... 9, 12, 13

Paquin v. Four Seasons of Tenn., Inc.,
    519 F.2d 1105 (5th Cir. 1975) .................................................................................. 11

Pigott v. Sanibel Development, LLC,
    576 F. Supp. 2d 1285 (S.D. Ala. 2008) ................................................ 10, 12, 26, 27

Prebil v. Pinehurst, Inc.,
    638 F.Supp. 1314 (D. Mont. 1986) ........................................................................... 14

Rockefeller v. High Sky, Inc.,
    394 F. Supp. 303 (E.D. Pa. 1975)......................................................................... 5, 26

Schatz v. Jockey Club Phase III Ltd.,
    604 F. Supp. 537 (S.D. Fla. 1985) ............................................................................. 9

Shockley v. Vermont State Colleges,
    793 F.2d, 478 (2d Cir. 1986) ........................................................................ 7

Skidmore v. Swift & Co.,
    323 U.S. 134, 65 S. Ct. 161, 89 L.Ed. 124 (1944) ................................... 24

Taylor v. Holiday Isle, LLC,
    561 F. Supp. 2d 1269 (S.D. Ala. 2008) .................................................... 13

Trotta v. Lighthouse Point Land Co., LLC,
    551 F. Supp. 2d 1359 (S.D. Fla. 2008) ..................................................... 29

Venezia v. 12th & Division Properties, LLC,
    209 WL 2366417 (M.D. Tenn. July 30, 2009) .......................................... 10

Winter v. Holingsworth Properties, Inc.,
    777 F.2d 1444 (11th Cir. 1985) ........................................................... 10, 14

## **STATUTES**

15 U.S.C. § 1701(4) ......................................................................... 4, 11

15 U.S.C. § 1701-20 .............................................................................. 1

15 U.S.C. § 1702(a) ................................................................. 2, 6, 19, 21

15 U.S.C. § 1702(a)(2) .................................................................... 6, 15

15 U.S.C. § 1702(a)(7) ......................................................................... 6

15 U.S.C. § 1702(a)(s) ....................................................................... 29

15 U.S.C. § 1702(b)(1) ................................................................. 1, 6, 15

15 U.S.C. § 1703(a)(1)(A) ................................................................. 12

15 U.S.C. § 1703(a)(1)(b) ................................................................. 23

15 U.S.C. § 1703(a)(1)(B) ................................................................. 12

15 U.S.C. § 1703(b) ..................................................................... 5, 12

15 U.S.C. § 1703(c) ............................................................. 1, 6, 8, 31

15 U.S.C. § 1703(d) .................................................................... passim

15 U.S.C. § 1703(e) ...................................................................... 1, 3

15 U.S.C. § 1704 .............................................................................. 11

15 U.S.C. § 1704(a) .................................................................................................. 22

15 U.S.C. § 1705 ...................................................................................................... 11

15 U.S.C. § 1708 ........................................................................................................ 5

15 U.S.C. § 1709(a) .................................................................................................. 25

15 U.S.C. § 1709(b) .................................................................................................. 25

15 U.S.C. § 1709(c) .......................................................................................... 3, 7, 25

15 U.S.C. § 1710.1(b) .......................................................................................... 10, 28

## RULES

F.R.C.P. 56 ................................................................................................................. 7

F.R.C.P. 56(c) ............................................................................................................. 7

## REGULATIONS

24 C.F.R. § 1710.1 ................................................................................................. 3, 4

24 C.F.R. § 1710.4(d) .............................................................................................. 14

24 CFR § 1710.20(a).......................................................................................... 22, 23

24 CFR § 1710.3 ...................................................................................................... 23

24 CFR § 1710.5(b) through (h) ............................................................................. 15

24 CFR § 1715.20(b) ............................................................................................... 23

61 Fed. Reg. 13596 ...................................................................................... 14, 15, 28

61 Fed. Reg. 13602 .......................................................................................... 14, 28

61 Fed. Reg. 13604 .................................................................................................. 15

61 Fed. Reg., at 13610, VIII(a) ............................................................................... 15

## PRELIMINARY STATEMENT

This is a case of statutory interpretation and enforcement ripe for summary judgment. Plaintiffs are contract purchasers of condominium units from Defendant, Borden East River Realty LLC ("Borden East" or "Developer") with identical purchase agreements. Plaintiffs seek to revoke their purchase agreements and obtain a refund of their deposits, together with their attorneys' fees and costs, based upon Borden East's incontrovertible failure to comply with a federal consumer protection statute, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701-20 ("ILSA"), which clearly and unambiguously provides for such rights.

ILSA prohibits sales of non-exempt condominium units unless the developer registers the condominium through the filing of a Statement of Record with the United States Department of Housing and Urban Development ("HUD") and provides a written property report approved by HUD ("HUD Property Report") to purchasers prior to the signing of the purchase agreements. Where the developer fails to comply with ILSA's registration and documentation requirements, the purchaser has an automatic, statutory right to revoke the purchase and obtain his/her deposit monies back. See 15 U.S.C. § 1703(c), (d) and (e).

In the case sub judice, it is undisputed that Borden East failed to register the subject condominium with HUD and failed to provide each Plaintiff with a HUD Property Report prior to the execution of their purchase agreements. Each Plaintiff timely exercised their automatic statutory right to rescind their purchase agreements. Borden East refused to return the deposit and therefore, litigation ensued.

Borden East's attorneys have manufactured a defense to Plaintiffs' ILSA claims, purporting that Borden East can retroactively take advantage of combining the Fewer Than 100 Lot Exemption (15 U.S.C. § 1702(b)(1)) with one or more exemptions under 15 U.S.C.

§ 1702(a) (hereinafter referred to as the "Piggybacking Defense"). Borden East takes this counter-intuitive position despite Defendants[1] (a) having never heard about ILSA or its requirements at the time it filed its New York Offering Plan, (b) having never heard about ILSA or its requirements when several of the Plaintiffs signed their purchase agreements and (c) failing to have any plan in place on the date each of the Plaintiffs executed their purchase agreements for all units at the subject condominium to be or become exempt from ILSA. In fact, at the time the Plaintiffs entered into their purchase agreements, there was no manner for any sales of condominium units to qualify for the exemptions that Defendants are now claiming. Defendants can only rely on a myopic and self-serving interpretation of a HUD Guideline and an ex parte HUD Advisory Opinion antithetical to HUD's prior pronouncements and contradicting its Initial Advisory Opinion issued just two days prior that ruled Borden East **is not exempt from ILSA**.

The statutory language and reported case law addressing the issue make clear that a developer cannot retroactively claim an exemption that did not exist at the time a purchaser signed the purchase agreement. Moreover, it is manifest that the Piggybacking Defense was crafted by Defendants' attorneys only after (a) Defendants were served with an ILSA rescission notice and (b) Defendants' attorneys scoured ILSA, its Regulations and HUD's Guidelines to invent a defense. Accordingly, the only conclusion to be made is that Defendants' asserted Piggybacking Defense was adopted solely for the purpose of evading ILSA's requirements, which in and of itself is a violation of ILSA. See 15 U.S.C. § 1702(a).

Defendants' equitable defenses are equally unavailing, as Plaintiffs' rescission rights are automatic, regardless of Plaintiffs' reasons for rescission.

---

[1] Borden East's individual principal, Joseph Simone ("Simone") is also a named defendant. Plaintiffs' motion for partial summary judgment is against Borden East only.

Plaintiffs are entitled to partial summary judgment against Borden East as a matter of law. Plaintiffs are entitled to the return of their deposits, plus accrued interest See 15 U.S.C. § 1703(e)) and reimbursement of their attorneys' fees and costs. See 15 U.S.C. § 1709(c)).

## SUMMARY OF UNDISPUTED MATERIAL FACTS

For the sake of brevity, the Parties' Statement of Undisputed Material Facts Pursuant to Local Civil Rule 56.1 (the "Material Facts") and the documents annexed to the Declaration of Lawrence C. Weiner, Esq. (for Plaintiffs) and Bruce Lederman, Esq. (for Defendants) are incorporated by reference as if same were set forth at length herein.

All of the Plaintiffs are contract purchasers of new construction condominium units at the condominium development known as Hunters Point Condominium ("Hunters Point") located at 5-49 Borden Avenue, Long Island City, New York. See ¶¶ 4 and 1 of the Material Facts. All of the purchase agreements are identical. See Exhibits 3, 5, 7, 9, 11, 13, 15 and 17, to the Declaration of Lawrence C. Weiner (the "Weiner Dec."). None of the purchase agreements make any reference whatsoever to ILSA, or Regulations, 24 C.F.R. § 1710.1, et seq. See ¶ 24 to the Material Facts.

Pursuant to the New York Offering Plan filed on behalf of Hunters Point with the Attorney General's Office on September 11, 2007 (the "Hunters Point Offering Plan"), Hunters Point consisted of one hundred thirty-two (132) residential, twenty-six (26) roof terrace units and twenty-five (25) parking space units which were all open for sale to the general public after September 11, 2007. (Id. at ¶ 2).

From September 11, 2007 to the present, Hunters Point and Hunters View Condominium ("Hunters View")[2] have been and are currently being promoted under one "common promotional

---

[2] Pursuant to the New York Public Offering Plan filed on behalf of Hunters View with the New York Attorney General's Office on September 11, 2007, Hunters View consisted of seventy-three (73) residential units, fifteen (15)

plan" as that term is defined in 15 U.S.C. § 1701(4). (Id. at ¶ 17). At the time the offering plans were filed, Hunters Point and Hunters View, combined, had 205 residential units. (Id. at ¶¶ 2 and 6). Moreover, Borden East has employed several instrumentalities of interstate commerce to market and promote units for sale in Hunters Point. (Id. at ¶ 21).

Neither the Hunters Point Offering Plan nor the Hunters View Offering Plan contain any reference whatsoever to ILSA, or its Regulations 24 C.F.R. § 1710.1 et seq.. (Id. at ¶ 23 and Exhibit Q to the Declaration of Bruce Lederman (the "Lederman Dec.")). Moreover, there are no restrictions in either offering plan on which residential unit a purchaser can buy or when. See ¶¶2 and 6 to the Material Facts and Exhibit Q to the Lederman Dec. Stated another way, after September 11, 2007, anybody, including Plaintiffs, could have walked into Borden East's sales office and purchase any residential unit, as long as it was not already sold. See ¶¶ 2, 6, and 43 of the Material Facts and Exhibit Q to the Lederman Dec. Indeed, logic dictates that if after September 11, 2007, hundreds of potential purchasers agreed to buy each unit in the Condominium, signed a purchase agreement and paid the deposit, Defendants would have agreed to sell each and every unit. This would have been a developer's dream, a fully sold out condominium before the condominium was even built. Defendants did not have any ILSA exemptions in place or a plan to fit within any ILSA exemptions and was therefore, offering 205[3] non-exempt residential units, 41 non-exempt roof terrace units and 62 non-exempt parking space units for a combined total of 308 non-exempt units.

---

roof terrace units and thirty-seven (37) parking space units which were all open for sale to the general public after September 11, 2007. (Id. at ¶ 6). Jointly, at the time the offering plans were filed, Hunters Point and Hunters View consisted of a total of two hundred five (205) residential units, forty-one (41) roof terrace units and sixty-two (62) parking space units which were all open for sale to the general public after September 11, 2007. (Id. at ¶ 13). Hunters Point and Hunters View shall hereinafter be referred to jointly as (the "Condominium").

[3] When combined with Hunters View.

Indeed, on the date that the Hunters Point Offering Plan and the Hunters View Offering Plan were filed, Borden East and its individual principal, defendant Joseph Simone had never heard of or knew about ILSA and it was not considered in any legal analysis or in the marketing and sales of units at Hunters Point. (Id. at ¶ 25.) Moreover, Borden East and Simone had never heard of or knew about ILSA and it was not considered in any legal analysis or in the marketing and sales of units at Hunters Point when Plaintiffs, John Gaenzler and Sara Moscoso-Gaenzler, Anthony Allicino and Kyung Yeol Shin executed their purchase agreements. (Id. at ¶¶ 4 and 28). Defendants claim to have only first learned of ILSA in or about November or December, 2007, yet chose to ignore ILSA's application to Hunters Point because it mistakenly believed that its filing of the Hunters Point Offering Plan provided all necessary and required disclosures to purchasers.[4] (Id.).

Simply stated, Defendants either were ignorant of or chose to ignore ILSA at the decisive time to determine when Borden East could take advantage of any of ILSA's exemptions; the dates when the purchase agreements were executed.[5] In fact, Defendants admit that on the date that each of the Plaintiffs executed their purchase agreements, there was no plan in effect by

---

[4] There is no such thing under ILSA as "substantial compliance" with the HUD Property Report requirement. See Law v. Royal Palm Beach Colony, Inc., 578 F.2d 98, 101 (5th Cir. 1978) (Where a developer provided purchaser the property report a month after executing the purchase agreement, the court held that purchaser has the right to rescind, that the plain language of the statute gives them the right to rescind the agreement); Rockefeller v. High Sky, Inc., 394 F. Supp. 303, 305 (E.D. Pa. 1975) (Court rejected developer's argument that it gave Plaintiff all or substantially all the information which the property report would have given them.) Accordingly, a condominium offering plan cannot replace a HUD Property Report.

Moreover, the State of New York never obtained from HUD a certificate of substantially equivalent state law under 15 U.S.C. § 1708 which is the only way to have obviated the need to comply with ILSA's registration and disclosure requirements.

[5] It is unclear why Defendants failed to comply with ILSA despite purportedly learning about it in late 2007. Considering HUD registrations often delay a developer's desire to go to market and that ILSA provides purchasers with additional rights unavailable under state law (see 15 U.S.C. § 1703(b)), a willful rush to market and avoidance of federal law by the developer should not at all be discounted. As a result of Defendants' intentional inaction, Plaintiffs were not given federally mandated disclosures or protections.

Borden East for sales of units in Hunters Point to be or become exempt from the requirements of ILSA. (Id. at ¶29).

Based on the timeline of events, there can be no doubt that Defendants' Piggybacking Defense was manufactured by clever lawyering in order to evade the reach of ILSA. Defendants admit that "following receipt of one of Plaintiffs' counsel's rescission letters received on or about January 27, 2009, [Defendants] began to more fully investigate allegations of ILSA violations, which resulted in **retention of counsel and a determination by them**, after receiving a Temporary Certificate of Occupancy ("TCO") on February 17, 2009 for Hunters Point ... that the [Condominium] was exempt under the Fewer Than 100 Lot Exemption (15 U.S.C. § 1702(b)(1)) combined with the Improved Lot Exemption (15 U.S.C. § 1702(a)(2)) and a sale to a person for purposes of resale to such persons engaged in such business exemption (15 U.S.C. § 1702(a)(7))." (Id. at ¶ 28) (Emphasis added). What legitimate business purpose is there for attempting to retroactively assert exemptions to a time period when Defendants either did not know about or chose to ignore ILSA? The answer is there is no legitimate business purpose.

So not only is the Piggybacking Defense unavailable to Defendants because the exemptions were not in place at the time the Plaintiffs executed their purchase agreements, but it is also unavailable to Defendants because it was adopted solely for the purpose of evading ILSA, which is prohibited by 15 U.S.C. § 1702(a).

As reported cases have already held, Defendants are and should be precluded from this retroactive application and purposeful evasion of ILSA's requirements. Since it is undisputed all Plaintiffs have timely exercised their right to rescind the purchase agreements pursuant to 15 U.S.C. § 1703(c) and (d)[6], Plaintiffs are entitled to the return of their deposit monies (see 15

---

[6] Id. at ¶42.

U.S.C. § 1703(e)), with interest, and the reimbursement of their attorneys' fees and costs.  See 15 U.S.C. § 1709(c).

## LEGAL ARGUMENT

## POINT I

## STANDARD OF REVIEW UNDER F.R.C.P. 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  F.R.C.P. 56(c).  Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material facts exists.  LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995).  "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the non-moving party's claim."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  If the moving party meets its burden, the burden shifts to the opposing party to come forward with "specific facts showing that there is genuine issue for trail."  F.R.C.P. 56(e).

When deciding a summary judgment motion, the court must "resolve all ambiguities and inferences . . . in the light most favorable to the party opposing the motion."  Neratko v. Frank, 31 F. Supp. 2d 270, 278 (W.D.N.Y. 1998) (quoting Shockley v. Vermont State Colleges, 793 F.2d, 478, 481 (2d Cir. 1986)).  The question is whether, in light of the evidence, a rational jury could find in favor of the non-moving party.  Gall v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994).  Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

#3234342 (153641.001)

The underlying facts of these consolidated actions are not in dispute.  Indeed, Defendants are moving for summary judgment as well.

It cannot be disputed that ILSA applies to Hunters Point.  It is undisputed that Borden East failed to comply with the registration and document requirements under ILSA.  It is undisputed that Borden East failed to provide Plaintiffs with a HUD Property Report.  It is undisputed that Plaintiffs have timely asserted their right to rescind pursuant to 15 U.S.C. § 1703(c) and (d).

ILSA and authoritative reported case law hold that compliance with ILSA and the applicability of any exemption are measured at the time a purchaser executes the purchase agreement.  Defendants readily admit that it (a) had no clue about ILSA when the Hunters Point Offering Plan was filed, (b) had no clue about ILSA or chose to ignore ILSA when Plaintiffs executed their purchase agreements and (c) had no plan in place for units at Hunters Point to be or become exempt from ILSA at the time Plaintiffs executed their purchase agreements.  Therefore, as a matter of law, Defendants cannot retroactively apply the Piggybacking Defense.  Regardless, Defendants attempt to now use the Piggybacking Defense shows a clear intent to evade ILSA, as there can be no legitimate business purpose for trying to retroactively apply exemptions.  Defendants reliance on a myopic and self-serving interpretation of a HUD Guideline and a misguided advisory opinion from HUD give Defendants no solace.

## POINT II

### ILSA'S BROAD SCOPE AND APPLICATION TO THE CONDOMINIUM

#### A.      The Purpose of ILSA – Broad Coverage.

ILSA was enacted in 1968 and is "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by

potential buyers.  [ILSA] is based on the full disclosure provisions and philosophy of the Securities Act of 1933, which it resembles in many respects." Flint Ridge Dev. Co. v. Scenic Rivers Ass'n, 426 U.S. 776, 778 (1976) (internal citations omitted).  The "undisputed purpose of [ILSA is] to prohibit fraud and to protect purchasers of land which is part of a common promotional scheme.  The language of [ILSA] is meant to be read broadly to effectuate this goal." Olsen v. Lake Country, 955 F.2d 203, 205 (4th Cir. 1991) (internal citations omitted). Having been based on the Securities Act of 1933, ILSA was intended to "give the purchaser [of land] such information necessary to make his own determination of the quality of what is being sold ... the seller of undeveloped land covered by this title would be required to inform the purchaser not only of the desirable but also of any undesirable aspects." Id.  Husted v. Amrep Corporation, 429 F. Supp. 298, 303 (S.D.N.Y. 1977) (internal citations omitted).

ILSA should be construed not technically, but flexibly to effectuate its remedial purposes. McCown v. Heidler, 527 F.2d 204, 207 (10th Cir. 1975).  ILSA "is to be construed to effectuate its rendered purpose of protecting the land sale consumer." Dorchester Development, Inc. v. Burk, 439 F.2d 1033, 1035 (Fla. 3d DCA 1983) (internal citations omitted).  The Congressional purpose behind ILSA is to protect the consumer. Schatz v. Jockey Club Phase III Ltd., 604 F. Supp. 537, 542 (S.D. Fla. 1985).  This purpose would be thwarted if courts were to burden the purchaser with the requirement of claiming actual injury when Congress does not require such a claim.  Indeed, Congress designed ILSA to protect purchasers to prohibit fraud in real estate sales by requiring the developers to make certain disclosures in advance of a purchaser signing the purchase agreement. Ahn v. Merrifield Town Center Limited Partnership, 584 F. Supp. 2d 848, 853 (E.D. Vir. 2008).  Through ILSA's disclosure requirements, Congress intended to ensure that, "prior to purchasing certain types of real estate, a buyer [is] appraised of information

needed to make an informed decision." Id., (internal citations omitted). This protection extends to the purchase of condominiums.

**B.      It is Well Settled that ILSA Applies to Condominiums.**

In a seminal decision, the Eleventh Circuit held that ILSA applies to condominiums. See Winter v. Holingsworth Properties, Inc., 777 F.2d 1444, 1448 (11th Cir. 1985). Over the last three decades, courts in numerous jurisdictions, including the Southern District of New York, have consistently followed the Winter decision and held that ILSA applies to condominium units. See Beauford v. Helmsley, 740 F. Supp. 201 (S.D.N.Y. 1990); See also Pigott v. Sanibel Development, LLC, 576 F. Supp. 2d 1285 (S.D. Ala. 2008); Giralt v. Vail Village Inn Associates, 759 P.2d 801 (Colo. Ct. App. 1988); Nargiz v. Henlopen Developers, 388 2d 1362, 1364 (Del. 1977); In re Paramount Lake Eaola LP Litig., 2009 U.S. Dist. LEXIS 78643 (M.D. Fla. Aug. 17, 2009); Markowitz v. Northeast Land Company, 906 F.2d 100 (3d Cir. 1990); Venezia v. 12th & Division Properties, LLC, 209 WL 2366417 (M.D. Tenn. July 30, 2009); Ahn v. Merrifield Town Center Limited Partnership, 584 F. Supp. 2d 848 (E.D. Vir. 2008).

In fact, in Judge Sweet's written opinion in Beauford, his Honor quoted from Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1448 (11th Cir. 1985) as follows:

> The ILSFDA was intended to curb abuses accompanying interstate land sales. The Act accomplishes that goal by including within it all sales of lots and then exempting a number of transaction, including sales of fully improved property. It is reasonable to conclude, as HUD did, that the term "lot" was used to refer generally to interests in realty. The legislative history supports this construction, employing the terms "lot," "land," and "real estate" in discussing the Act. This construction is also reasonable in terms of the purpose of the statute. A fraudulent out-of-state sale of land is not rendered any less fraudulent if the condominium form of ownership is utilized.

Moreover, ILSA's Regulation at § 1710.1(b) defines "lot" as follows:

Lot means any portion, piece, division, unit or undivided interest in land located in any State or foreign county, if the interest includes the right to the exclusive use of a specific portion of the land.

**C.      Hunters Point Required To Comply With ILSA.**

It cannot be disputed Hunters Point is and always was comprised of over ninety-nine (99) residential units offered for sale to the public.  See ¶2 of the Material Facts and Exhibit Q to the Lederman Dec.  Defendants have admitted that units in Hunters Point were offered for sale as part of a "common promotional plan" as that term is defined in 15 U.S.C. § 1701(4).  (Id. at ¶17). Lastly, Borden East has admitted that it uses and has used instrumentalities of interstate commerce to market and promote units for sale at Hunters Point.  (Id. and ¶28).  There can be no doubt that ILSA applies to Hunters Point.  There can also be no doubt that Borden East has failed to comply with ILSA.

## POINT III

### BORDEN EAST FAILED TO COMPLY WITH ILSA

ILSA requires developers to inform buyers, prior to the purchase of lots, of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the property.   Paquin v. Four Seasons of Tenn., Inc., 519 F.2d 1105, 1109 (5th Cir. 1975). Therefore, before selling any unit not exempt under 15 U.S.C. § 1702, a developer engaged in interstate land sales must first (a) file a statement of record with the HUD pursuant to 15 U.S.C. § 1704,[7] and (b) provide a Property Report approved by HUD to the purchaser before he or she signs any agreement.[8]  It is unlawful under ILSA to sell any unit without filing the statement of

---

[7] 15 U.S.C. § 1705 sets out exactly what the Statement of Record must include.

[8] The property report "is an extensive disclosure that must include such information such as identification of interested persons; legal description of the subdivision; statement of general terms and conditions (including the range of selling prices); statement of the present condition of access to the subdivision; existence of unusual conditions relating to noise or safety; availability of sewage disposal and other public utilities, proximity to nearby municipalities, and the nature and completion schedule for proposed improvements; statements relating to any blanket encumbrances; and such other information as the Secretary of HUD might require as reasonably necessary

record with HUD and providing the required Property Report to purchasers in advance of the signing of the agreement.  15 U.S.C. § 1703(a)(1)(A) and (B).

ILSA also requires the developer to provide the buyer (a) an option to revoke the purchase agreement within seven days of signing.  See 15 U.S.C. § 1703(b)) and (b) with a specific description of the lot being purchased and to inform him of the consequence and remedies of default, and if such notice is not provided, the agreement is revocable at the option of the purchaser for a period of two years after signing.  See 15 U.S.C. § 1703(d).

A simple review of the purchase agreements and the Material Facts confirm that none of the above requirements were followed by Borden East.  Unquestionably, Borden East has violated ILSA, a federal consumer protection statute whose purpose is to protect the public and therefore, is to be liberally construed in favor of purchasers.  See 200 East Partners LLC v. Gold, 997 So. 2d 466, 469 (Fla. 4th DCA 2008); Olsen v. Lake Country, Inc., 955 F.2d 203, 205 (4th Cir. 1991); Piggott v. Sanibel Development, LLC, 576 F. Supp.2d 1258, 1268 (S.D. Ala. 2008). As will be explained in detail below, Defendants attempt to retroactively apply the Piggybacking Defense should not be allowed by the Court.

**POINT IV**

### BORDEN EAST IS NOT EXEMPT FROM ILSA AS A MATTER OF LAW BECAUSE NO EXEMPTION EXISTED AT THE TIME THE PLAINTIFFS' CONTRACTS WERE EXECUTED

ILSA and the reported case law addressing ILSA consistently articulate that ILSA exemptions are to be narrowly construed and ILSA compliance (and therefore application of an exemption) is to be measured at the time the purchaser executes the purchase agreement. Defendants' attempt to retroactively apply the Piggybacking Defense distorts these well

---

or appropriate for protection of purchasers." Piggott v. Sanibel Development, LLC, 576 F. Supp.2d 1258, 1267 (S.D. Ala. 2008).

established bedrock principles of ILSA and if accepted, would turn over 30 years of ILSA jurisprudence on its head.

### A.    Exemptions Are To Be Narrowly Construed

ILSA is a "strict liability statute enacted for the purpose of protecting the public." 200 East Partners, LLC v. Gold, 997 So.2d 466, 469 (Fla. App. 4th Dist. 2008), rehearing denied (January 23, 2009). Accordingly, the courts construe exemptions narrowly in order to further ILSA's purpose of consumer protection. Gentry v. Harborage Cottages-Stuart, LLLP, 602 F.Supp.2d 1239, 1248 (S.D. Fla. 2009) (ILSA "is a remedial statute intended to protect consumers … and requires ambiguities concerning exemptions to be construed narrowly") (citation omitted): Taylor v. Holiday Isle, LLC, 561 F.Supp. 2d 1269, 1275 (S.D. Ala. 2008) (ILSA is a remedial statute and "exemptions from remedial statutes are to be narrowly construed"); Olsen v. Lake County, Inc., 955 F.2d 203, 206 (4th Cir. 1991) (interpreting ILSA, "exemptions from remedial statutes are construed narrowly"); DeLuz Roanchos Inv. Ltd. v. Coldwell Banker & Co., 608 F.2d 1297, 1302 (9th Cir. 1979) (ILSA "should be liberally construed in favor of broad coverage to effectuate its remedial purpose … in accordance with that policy, we narrowly construe the exemption[s]").

In addition, the burden of asserting and demonstrating entitlement to an exemption is on the defendant. N & C Properties v. Pritchard, 525 So. 2d 1346, 1350 (Ala. 1988) (a developer who wishes to take advantage of an exception must maintain records to demonstrate that the requirements of the exception have been met), cert. denied, 488 U.S. 856 (1988); See also Gentry, 602 F.Supp. 2d at 1249-51 (granting summary judgment on liability because developer unable to demonstrate a legitimate business purpose for claimed exemptions); Bair v. Atlantis LLC, 2008 WL 5051398, at *4 (W.D. Mo. Nov. 20, 2008) (granting partial summary judgment

against defendant developer because "Defendant has provided no evidence" it qualified for exemption). Indeed, 24 C.F.R. § 1710.4(d) requires:

> If a developer elects to take advantage of an exemption, the developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met.

## B.   A Developer's Compliance With ILSA Is Measured When Purchaser Executes The Purchase Agreement

The cases make clear that seller's compliance with ILSA is measured at the time that the Plaintiff signed the contract, not at some later date. See 200 East Partners, LLC, 997 So.2d 466; Grove Towers, Inc. v. Lopez, 467 So.2d 358, review denied 480 So.2d 1294 (Fla. App. 3d Dist. 1985); Ahn v. Merrifield Town Center Limited Partnership, 584 F.Supp 2d 848 (E.D. Va 2008); See also Winter, 777 F.2d at 1450 ("The language of the statute … focuses on the time the purchaser signs the contract … We decline to depart from the plain language of the statutory exemption."); Prebil v. Pinehurst, Inc., 638 F.Supp. 1314, 1318 (D. Mont. 1986); Dep't of Housing and Urban Dev., 61 Fed. Reg. 13596), 13602 (1996) (for purposes of the Act, the "sale" occurs the date the purchaser signs the contract and assumes an obligation).

Defendants' Piggybacking Defense improperly measures ILSA compliance at a later date, the date they (fortuitously) obtained a Temporary Certificate of Occupancy.   Defendants "sold" (i.e., executed purchase agreements) lots to Plaintiffs without complying with (in fact, without even knowing about) ILSA and now assert they came into compliance with ILSA on February 17, 2009 because the Improved Lot Exemption will exempt all future sales of the remaining lots at the Condominium.  However, at the time Plaintiffs' purchase agreements were signed, all lots[9] fell within the "common promotional plan" and none met any exemption.  Such evasion violates ILSA, as held by cases specifically addressing the issue.

---

[9] All 205 residential lots between Hunters Point and Hunters View.

## C.   ILSA and Case Law Interpreting it Repudiate Defendants' Scheme to be Exempt from ILSA

In 200 East Partners, which involved a 115 unit development, the defendant developer claimed it actually planned to first sell 99 units pursuant to the Fewer Than 100 Lot Exemption (15 U.S.C. § 1702(b)(1) and then sell the remaining 16 units under the Improved Lot Exemption (15 U.S.C. § 1702(a)(2) - substantially similar to Defendants' claim herein. (Id. at 468). The defendant developer also relied on an advisory opinion it received from HUD that stated that the piggybacking of exemptions as proposed by defendant developer is permissible[10] - just like Defendants herein. (Id. at 467). The defendant developer also relied on a HUD Guideline, 61 Fed. Reg. 13596, 13604 (Nov. 27, 1996)[11] - like Defendants herein. (Id. at 468). The 200 East Partners court rejected the attempted evasion of ILSA, holding:

> This court finds that because [developer] failed to perfect an exemption for all units of the 115 lot project prior to the [purchasers] executing their purchase and sales agreement, [developer] violated ILSA by failing to provide the [purchasers] with a printed property report.

(Id. at 469).

---

[10] The Court in 200 East Partners, LLC gave the Advisory Opinion holding that it was "unpersuasive." (Id. at 997 So. 2d at 469). HUD's own regulations recognize the very limited utility of ex parte opinion letters: "HUD's Advisory Opinions are based upon and limited to the representations made by the developer. Therefore, if a favorable Advisory Opinion is issued based upon incomplete, improper, or incorrect representations, the Opinion has no binding effect." 61 Fed. Reg., at 13610, VIII(a).

[11] 61 Fed. Reg. 13596, 13604, the Guideline Defendants rely on, states in pertinent part:

For example, a developer of a subdivision containing a total of 129 lots since April 28, 1969, qualifies for this exemption if at least 30 lots are sold in transactions that are exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in Sec. 1710.5(b) through (h) of this example. In the above example, the developer also could qualify if twelve lots had been sold with residential structures already erected on them, nine lots had been sold to building contractors and at least nine lots were reserved for either the construction of homes by the developer or for sales to building contractors. The reserved lots need not be specifically identified.

Developers of subdivisions containing more than 99 lots who wish to operate under this exemption must assure themselves that all lots in excess of 99 have been and will be sold in transactions exempt under 24 CFR 1710.5(b) through (h). The sale of more than 99 lots in transactions not exempt under Sec. 1710.5(b) through (h) would nullify this exemption for prior and future sales and might result in prior sales being voidable at the purchaser's option.

Indeed, the 200 East Partners court agreed with the trial court that "both the 100 lot exemption and the improved lot exemption had to be in effect and completely valid **at the time [Plaintiffs] executed their purchase and sale agreement**." (Id. at 468) (Emphasis added). In disagreeing with defendant developer's argument that the HUD Guideline allows such a scheme, the 200 East Partners Court opined:

> We do not interpret these Guidelines to permit a developer to wait until the sale of a unit in excess of the first ninety-nine to qualify for an exemption for the remaining units.

(Id.)

A similar analysis was applied by the Court in Grove Towers, supra, to rule that for the purpose of qualifying for the Fewer Than 100 Lot Exemption, the determining factor is not how many units were sold, but how many units were initially marketed as part of developer's common promotional plan.

In Grove Towers, 467 So.2d 358, the developer of a 108 unit condominium sought to avoid ILSA, after selling units in violation of ILSA, by combining several unsold units to bring the total number under 100. However, at the time the purchase Plaintiff executed the purchase agreement, all the condominium documents represented that the condominium would consist of a total of 108 units. (Id. at 361). The court rightly rejected developer's attempt to retroactively exempt prior sales stating: "The omissions become **such at the moment of contract formation,** not at some later moment of contract fulfillment." 467 So.2d at 361 (emphasis added) (citations omitted). Indeed, the purchasers rights under ILSA "spring into being at the moment the contract of sale is entered into." (Id.) The Court in Grove Towers noted that to agree with defendant developer would "ignore the plain language of [ILSA], as well as its purpose[s]". (Id. at 360). Because the developer marketed the building as containing more than 100 units (in advertisements and in the offering plan), and had the option of building more than 99 units, the

developer was required to comply with ILSA. (Id. at 361). Since it did not, the purchasers had the right to revoke their contracts and obtain a refund of their down payment. Id.

In the case sub judice, Defendants concede that since September 11, 2007 Hunters Point consists and has always consisted of one hundred thirty-two (132) residential units.[12]  See ¶2 to the Material Facts.  It says it right there in black and white on the front cover of the Hunters Point Offering Plan.  See Exhibit Q to the Lederman Dec.  Therefore, and as Grove Towers dictates, for purposes of the Fewer Than 100 Lot Exemption, the Condominium contained 205 residential units, not the number of units Defendants claim were under contract on the date Borden East obtained a Temporary Certificate of Occupancy.

Such a stratagem was also rejected in Bair, 2008 WL 5051393, in which the developer argued the development might ultimately contain only 90 non-exempt units instead of the 240 advertised.  The court held that "for the purpose of the 100-lot exemption, the relevant number is not the number of units currently in existence," but rather the number of units **subject to a common promotional plan**."  Id. at *4 (emphasis added).  Indeed, if the Court were to accept Defendant's argument that the relevant number was the number of units currently in existence, the "common promotional plan" language in § 1701 would be of little or no effect, and developers planning to build subdivisions of more than 100 units would always be exempt until more than 99 units were actually completed.

In Ahn, supra, the developer tried to extend, by an average of 88 days, the 2-year period in the improved lot exemption by requiring seller ratification to start the period running.  The court held that "Congress intended to exempt from [ILSA] only those sales contracts that require

---

[12] Hunters View consisted of 73 residential units.  (See ¶6 to the Material Facts)  Combined, Hunters Point and Hunters View originally contained 205 residential units.

the seller to complete building within two years of the buyer's signing of the contract."  584

F. Supp.2d at 853.  The court continued:

> To allow the two-year building period to commence on the occurrence of some future event chosen at the seller's discretion would allow sellers to extend the two-year building period indefinitely while still qualifying for an exemption.  This would inappropriately sweep within the exemption's ambit the types of land sale situations Congress intended to be subject to, not exempt from, ILSFDA."

584 F. Supp.2d at 854.

Consistent with the fundamental canon of statutory construction that Congress' enactments must be interpreted in accordance with their plain language, the above cases make clear that a developer's exemptions must be in place at the time the purchaser signs the purchase agreement.  Each of the above cases refused to allow the developer to retroactively apply exemptions.  The Court should reconfirm the requirement that exemptions must be in place at the time purchasers signed the purchase agreements and deny defendants' attempt to retroactively apply exemptions.

## POINT V

### DEFENDANTS' PIGGYBACKING DEFENSE SERVES NO LEGITIMATE BUSINESS PURPOSE AND WAS ONLY ASSERTED TO EVADE THE REQUIREMENTS OF ILSA

Even if, arguendo, Defendants were able to assert the Piggybacking Defense, the Court should still rule that Borden East is not exempt because there can be no legitimate business purpose for retroactively implementing the Piggybacking Defense.  It is transparent that same was done only to evade the requirements of ILSA.

In Gentry, 602 F. Supp.2d 1239, the developer tried to piggyback the Improved Lot Exemption and the Fewer Than 100 Lot Exemption in a 126-unit development by using two different purchase agreements.  The first purchase agreement, which applied to 36 lots, required

the developer to complete construction within two years.  The second purchase agreement, which

applied to 90 lots, did not.  Although the court agreed that the developer might technically be

able to claim both exemptions, it nonetheless held that the purchasers were entitled to summary

judgment as to liability under ILSA.  On cross-motions for summary judgment, the court found

that "it appears that separate purchase agreements were used primarily to avoid compliance"

with ILSA's requirements and that the developer had not established any legitimate business

purpose for the use of different purchase agreements.  602 F. Supp.2d at 1249-50.  Thus, the

court held that the developer "evaded [ILSA's] requirements for purposes of § 1702 and is not

entitled to any exemptions found in § 1702(a) or (b) ."  Id. at 1251.

      In explaining its analysis, the Court in Gentry held:

> It also seems clear, however, from the language proscribing a
> method of disposition adopted for the purpose of evasion, that a
> seller's ability to avail himself of the statute's exemptions must be
> tempered to ensure that the exemptions are not used in an abusive
> manner.  Thus, an approach that maintains consistency with the
> text requires a sensible distinction to be drawn between conduct
> which has as its primary object avoidance of the ILSFDA's
> requirements and conduct that seeks to meet the requirements of an
> exemption for some legitimate business purpose.  Otherwise, the
> protections Congress intended to afford to consumers purchasing
> undeveloped home sites could in many instances be circumvented
> merely by clever drafting that lacks any meaningful objective other
> than to sidestep the ILSFDA's requirements.

(Id. at 1248).

      The Gentry Court then analyzed the relevant HUD Guideline developer relied on,[13]

stating:

> The requirement that a seller act pursuant to a legitimate business
> purpose when seeking an exemption is also consonant with the
> examples provided in the Guidelines.  The examples offered in the
> Guidelines concerning the availability of exemptions provide

---

[13] The same one Defendants rely on.

scenarios where the availability of an exemption is driven by a legitimate business purposes.

Each of these examples illustrate cases where the availability of an exemption is driven by a method of disposition that reflects a legitimate business purpose, as opposed to a method of disposition that lacks such a purpose and is adopted primarily to evade the ILSFDA's requirements. Therefore, requiring that the availability of an exemption be grounded in a legitimate business purpose is consistent with the language of the statute and the Guidelines, and strikes a workable balance that ensures the availability of the exemptions for their intended purposes while preventing their use in a manner that is abusive and unnecessarily diminishes consumer protection.

(Id. at 1248-1249).

The Guideline make pellucidly clear that a developer must have a plan in place at the commencement of the project in order to combine exemptions and further, there must be a legitimate business for combining such exemptions. Defendants do not meet either criteria.

Defendants admit that only after they received a rescission letter on behalf of one of the Plaintiffs did Defendants begin to investigate allegations of ILSA violations.[14] See ¶28 to the Material Facts. Such investigation resulted in the retention of counsel. (Id.) Thereafter, Defendants counsel must have scoured ILSA, ILSA's Regulations and HUD's Guidelines and only after such review did Defendants' counsel craft the defense that Defendants can retroactively be exempt from ILSA by combining the Fewer Than 100 Lot Exemption with other exemptions. (Id.) Moreover, the only reason Defendants could even take advantage of this

---

[14] In Grove Towers, the developer actually had a plan in place **before** the project commenced to combine exemptions and the court still found a purpose to evade. In the case sub judice, Defendants' Piggybacking Defense was not manufactured until after a Temporary Certificate of Occupancy was issued on February 19, 2009; after at least two of Plaintiffs' rescission letters were received (see Exhibits 6 and 8 to the Weiner Dec.) and the Complaint in Romero, 09 CV 665, had been filed. Defendants personify a purpose of evasion.

claimed Piggybacking Defense was the (fortuitous) obtaining of a Temporary Certificate of Occupancy before it made a sale of two more residential units.[15]

There can be no legitimate business purpose for Defendants' attempt to implement these exemptions.  Defendants admit that when faced with a claim of ILSA violation, it ran to their lawyers, who then crafted this argument.  The entire procedure Defendants followed to fight these ILSA lawsuits reeks of desperation.  The only reason for asserting the Piggybacking Defense is to evade ILSA, which in and of itself is a violation.  15 U.S.C. § 1702(a) specifically states that no exemptions will apply if "the method of disposition is adopted for the purpose of evasion of this chapter[.]"   No legitimate business purpose is served by such retroactive application.

Based on the foregoing, Defendants' admitted actions manifest an intent to evade ILSA.

## POINT VI

### HUD'S JULY 17, 2009 ADVISORY OPINION SHOULD BE GIVEN NO WEIGHT

Without any statutory authority or favorable case law to support its assertion that Defendants can retroactively apply the Piggybacking Defense, Defendants substantially rely upon HUD's inexplicable July 17, 2009 Advisory Opinion.  Such advisory opinion should be given no weight just like the one the developer relied on in 200 East Partners, which is substantially similar to the advisory opinion in the case sub judice.  See Point IV and Fn 6, supra.

---

[15] For the purpose of this motion, plaintiffs are taking Defendants representation to HUD of the number of residential units it executed contracts for at the Condominium prior to the Issuance of the Temporary Certificate of Occupancy at face value.  If the Court finds that Borden East can take advantage of the Under 100 Unit Exception, then Plaintiffs should be given the opportunity to conduct discovery to verify such number, especially since the count, by Defendants admission, is at 98 residential units.  It is submitted that we believe that these numbers do not include sales that have cancelled prior to the present, which is another attempt by the Defendants to evade ILSA by distorting facts to feign compliance when, in fact, they simply ignored this important consumer protection law.

HUD's July 17, 2009 Advisory Opinion was based solely on <u>ex parte</u> communications with Defendants' attorneys.  <u>See</u> Exhibits A-O to the Lederman Dec.  Indeed, HUD never once contacted Plaintiffs' attorneys.  (<u>Id.</u>)  HUD's July 17, 2009 Advisory Opinion fails to give any explanation as to why Defendants can retroactively apply exemptions.  HUD's July 17, 2009 Advisory Opinion contradicts its April 20, 2009 email.  Lastly, HUD's July 17, 2009 Advisory Opinion inexplicably contradicts its Initial Advisory Opinion issued just two days prior where HUD finds that Borden East is not exempt from ILSA because the roof terrace units and parking units must be counted towards the Fewer Than 100 Lot Exemption.  Given all these factors, the Court should give HUD's July 17, 2009 Advisory Opinion no weight.

On or about March 6, 2009, HUD launched its investigation of Defendants to determine whether Borden East has violated ILSA.  <u>See</u> Exhibit A, to the Lederman Dec. at HP00001.  For the next four plus months, HUD and Defendants' attorneys had regular <u>ex parte</u> oral and written communications.  <u>See</u> Exhibits A-O to the Lederman Dec.  Not once did HUD contact Plaintiffs' attorneys.  (<u>Id.</u>).

On or about April 20, 2009 HUD sent an email to Jose Rivera, Esq. pinpointing and highlighting Defendants' deficiencies in their initial reply to HUD's comprehensive questionnaire.  <u>See</u> Exhibit B to the Lederman Dec. at HP00120-123.  The email also reinforced that ILSA applies to developers as of the filing of the offering plan.  Specifically, HUD's email states:

> **[ILSA] applies as of the date of the first offering of sale**.  The date when the Public Offering Statement was approved by New York should be the point of beginning in the attempt to defend a failure to register a subdivision and file a Statement of Record pursuant to 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) based upon an exemption. (Emphasis added)

* * *

#3234342 (153641.001)

22

If a Developer does elect to take advantage of an exemption, the Developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met.

* * *

This original 132 Residential Units with 26 Roof Terrace Units and 25 Parking Units condominium project was approved for Offering by the State of New York on September 11, 2007. **Therefore, September 11, 2007 is the date where the analysis for One Hunters Point Condominium should begin in an attempt to defend a failure to register a subdivision** and file a Statement of Record pursuant to 15 U.S.C. 1704(a) and 24 CFR 1710.20(a) based upon an exemption. Also, if the project was to be registered there would have been failures to provide a Property Report pursuant to 15 U.S.C. § 1703(a)(1)(b) and 24 CFR 1710.3 which would then have a result of conducting an unlawful sales practice pursuant to 24 CFR 1715.20(b). (Emphasis added).

With reference to Defendants' responses to HUD's questionnaire, as well as supplemental material provided, HUD found such responses deficient, advising:

> **what was lacking was a clear and specific statement detailing how each development was able to be exempt in the first place** and how all of the sales of units within the condominium (both past and future) substantially complied with the available exemption provisions. (Emphasis added)

HUD also emphasized its belief that the Condominium's roof terrace units and parking units are units to be considered when determining the applicability of ILSA to the Condominium, stating:

> Based upon the information contained within the Declarations, the Parking Units and the Roof Terrace Units appear to be defined within the Declaration as full Units and not simply as general or limited common elements or divided interests which are assigned or licensed to specific parties. The Roof Terrace Units and the Parking Units appear to be separate conveyable Units as defined under 24 CFR 1701.1.

On July 15, 2009, HUD issued an Advisory Opinion ruling that the Condominium is not exempt from ILSA because the parking space units and roof top units are separate and distinct

units and therefore, should be counted along with the residential units for the purpose of the

Fewer Than 100 Lot Exemption.  See Exhibits to the Lederman Dec. at HP08459-463.  HUD's

July 15, 2009 Advisory Opinion states in pertinent part:

> Generally, the Department would not count a limited common element separately from the residential unit, even though the purchaser has an exclusive right of use.  In this case, the Declaration creates the parking space units and roof top terraces as separate and distinct units and therefore should be counted along with the residential units for the purpose of the 100 lot exemption. Unless the additional 12 parking spaces/roof terrace units that were sold are exempt, the Department advises that Developer's previous sales were not exempt from the registration requirements of the Act and are rescindable.  However, if the garage and roof common areas were completed at the time of the sale of these units, the sales would meet the Improved Lot Exemption.

Inexplicably, HUD contradicts itself and issued an antithetical advisory opinion only two

days later on July 17, 2009.[16]  See Exhibit L to the Lederman Dec. at HP00470-472.  HUD's

July 17, 2009 Advisory Opinion, fails to explain its reversal of its position that the roof terrace

units and parking units are units to be counted towards the Under 100 Lot Exemption.  HUD's

July 17, 2009 Advisory Opinion fails to give any explanation as to how and why it deviated from

its pronouncements set forth in HUD's email dated April 20, 2009[17] that exemptions must be in

place at the time the Offering Plan is filed, which in this case was September 11, 2007.  HUD's

July 17, 2009 Advisory Opinion fails to even address the relevant case law on the very topic.

Under Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1944),

the weight courts accord an agency interpretation depends on "the thoroughness evident in [the

agency's] consideration, the validity of its reasoning, its consistency with earlier and later

pronouncements, and all those factors which give it power to persuade, if lacking power to

---

[16] Both Advisory Opinions are signed by Ivy M. Jackson, Director, Office of RESPA and Interstate Land Sales.

[17] See Exhibit B to the Lederman Dec. at HP00120-123.

control." HUD's July 17, 2009 Advisory Opinion simply (a) adopts Defendants' representations about the Condominium, (b) evidences an utter lack of any independent investigation and (c) is devoid of any analysis or reasoning.

HUD's inexplicable flip-flop of its position on whether the Condominium was exempt, coupled with its complete deviation from its prior pronouncements in its April 20, 2009 email and failure to even consider reported case law on the very subject raises more questions than provides answers.

The Court should not give any weight to HUD's July 17, 2009 Advisory Opinion.

## **POINT VII**

### **DEFENDANTS' ASSERTED EQUITABLE DEFENSES ARE IRRELEVANT AND INADEQUATE AS A MATTER OF LAW**

In each Answer Defendants filed to Plaintiffs' Complaints, Defendants set forth the affirmative defense that the relief sought by Plaintiffs is against public policy and that equity should limit Plaintiffs' recovery.

As the unambiguous language of ILSA and the cases interpreting it make clear, Defendants are wrong. The asserted "equitable defense" is precluded by the language of and policy behind ILSA. ILSA is a strict liability statute and Plaintiffs' reasons for revoking, and the impact of the remedy on the Condominium and the New York real estate market in general, are not legitimate considerations under ILSA and do not create a material issue of fact.

In seeking summary judgment on their rescission claims under ILSA, Plaintiffs are specifically seeking relief only under 15 U.S.C. § 1709(b) and (c), and not under its subsection (a). Accordingly, the equitable discretion under 15 U.S.C. § 1709(a) to grant "relief as the court deems fair, just and equitable" is not implicated on this motion, and no basis exists for engrafting these equitable powers into the unqualified provisions of 15 U.S.C. § 1709(b) and (c).

#3234342 (153641.001)

Notably, there are no policy or judicial exceptions to the requirements of ILSA.  Ahn,

584 F. Supp.2d at 855 (refusing to allow a sales contract containing a promise to build within

two years from the date that seller chooses to be exempt because such an interpretation beyond

the statute would be an end run around Congress' intent); Bettis v. Lakeland, Inc., 402 F. Supp.

1300, 1302 (E.D. Tenn. 1975) (refusing to consider asserted policy exceptions to application of

ILSA; "to car[ry] out this type of judicial exemption ... would render nugatory the obvious

purpose" of statutory requirements).

It is no defense that a purchaser is sophisticated or a person not intended to be protected

by the Act.  Rockefeller, 394 F. Supp. at 305 ("Defendant asserts ... that it should be given the

opportunity to show that Plaintiffs are sophisticated business people to whom defendant

furnished the necessary information, and who personally visited and inspected the site.  What

defendant seeks an opportunity to prove is irrelevant.")

A purchaser may not be estopped from asserting rights under the Act.  Appalachian, Inc.

v. Olson, 468 So. 2d 266, 269 (Fla. App. 2d Dist. 1985) (affirming grant of summary judgment

in favor of revoking purchasers despite developer's allegations that purchasers had unclean

hands, "invested in the units for speculation and failed to close only because of the downturn in

the real estate market"; such allegations "are insufficient to bring the developers within the

doctrine of estoppel").

A purchaser's reasons for rescinding are irrelevant; buyer's remorse is not a ground to

deny rescission.  In Piggott, 576 F. Supp.2d at 1267 n.15, the defendant developer sought to

"impugn[ ] Plaintiffs' motives for rescission, branding Plaintiffs not as vulnerable consumers but

as opportunistic flippers seeking to extricate themselves from their promises not because they

were misled or misinformed, but purely because the condo market ... collapsed prior to the

contemplated closing dates."   In support of this argument, the developer cited deposition

testimony where Plaintiffs essentially admitted they sought to rescind because the market

collapsed and "went to hell." Id. The court was unimpressed:

> This Court is not sitting in judgment of the morality of Plaintiffs'
> rescission decisions.   Under the plain terms of the ILSFDA, if the
> Project is not exempt, then Sanibel's failure to furnish a property
> report conferred upon Plaintiffs an absolute right to back out of the
> transactions (for good reasons, bad reasons or no reasons) at any
> time within a two-year period.   Whether the Plaintiffs had a
> morally defensible reason for rescinding is simply not for this
> Court to decide.

Piggott, 576 F. Supp.2d at 1267 n.15 (citation omitted).

Accordingly, Defendants' asserted equitable defenses are without merit as a matter of

law.

## POINT VIII

### THE CONDOMINIUM'S ROOF TERRACE UNITS AND PARKING UNITS SHOULD BE COUNTED TOWARDS THE FEWER THAN 100 LOT EXEMPTION, 15 U.S.C. § 1702(b)(1)

Defendants' Piggybacking defense is premised upon their assertion that only 98

residential units at the Condominium were sold prior to the issuance of the Temporary Certificate

of Occupancy, allowing Defendants to take advantage of the Fewer Than 100 Lot Exemption.

Defendants' analysis fails to take into account the Condominium's roof terrace units and parking

units that were sold prior to the issuance of the Temporary Certificate of Occupancy, 12 in all.[18]

These units should be counted towards the Fewer Than 100 Lot Exemption as well because the

purchaser of each such unit receives fee simple ownership of same, each unit has its own legal

description and, each unit owner has exclusive use of such unit.

---

[18] HUD's July 15, 2009 Advisory Opinion states in pertinent part:  "You have represented that between the two subdivisions the Developer sold a total of 12 parking space/roof terrace units."

ILSA's Regulation at § 1710.1(b) defines "lot" as follows:

> Lot means any portion, piece, vision, unit or undivided interest in land located in any State or foreign county, if the interest includes the right to the exclusive use of a specific portion of the land.

The HUD Guideline at 61 Fed. Reg. 13596, 13602 (March 27, 1996), sheds more light on the term "lot," stating:

> Lot means any portion, piece, division, unit or undivided interest in land if such interest includes the right to the exclusive use of a specific portion of the land or unit. This applies to the sale of a condominium or cooperative unit or a campsite as well as a traditional lot.

> If the purchaser of an undivided interest or a membership has exclusive repeated use or possession of a specific designated lot, if for a portion of the year, a lot, as defined by the regulations, exists. For purposes of definition, if the purchaser has been assigned a specific lot on a recurring basis for a defined period of time and could eject another person during the time he has the right to use that lot, then the purchaser has an exclusive use.

As it relates to the roof terrace units and parking units available at the Condominium, Defendants admit[19] the following:

- Each residential, roof terrace and parking space unit available at Hunters Point and Hunters View has a separate real estate block and lot. See ¶ of the Material Facts;

- Each roof terrace unit and each parking space unit available at Hunters Point and Hunters View is taxed separately from any residential unit. (Id. at ¶ 8);

- Each purchaser of a residential unit who elects to purchase a roof terrace unit or parking space unit receives fee simple ownership by deed which includes each roof terrace unit purchased and each parking space unit purchased at Hunters Point and/or Hunters View. (Id. at ¶ 9);

- Each roof terrace unit and each parking space unit available at Hunters Point and/or Hunters View is described with a reference to the filed Declaration of Condominium and By-Laws of the Condominium. (Id. at ¶ 10);

---

[19] Each admission is based upon the Condominium's respective Declarations and representations to HUD.

- Each roof terrace unit available at Hunters Point and/or Hunters View is physically separate from, and not directly adjacent to, any residential unit at the Condominium, and has a separate unit number designation in the Offering Plan. (Id. at ¶ 11);

- Each parking space unit available at Hunters Point and/or Hunters View is physically separate from, and not directly adjacent to, any residential unit at the Condominium, and has a separate unit number designation in the Offering Plan. (Id. at ¶ 12).

When a condominium declaration creates separate parking condominiums that entitle units to exclusive ownership and possession, these parking condominiums are "lots" under ILSA. Giralt v. Vail Village Inn Assoc., 759 P.2d 801, 808 (Colo. Ct. App. 1988).  In Giralt, a condominium project's Declaration of Covenants, Conditions and Restrictions stated that the project was divided into 141 condominiums (including the 107 parking condominiums), each consisting of a separate fee simple estate in a particular condominium and that each owner shall be entitled to the exclusive ownership and possession of his condominium.  The Giralt Court held that since parking units are interests in real estate and a form of ownership of space to which the owners have the right to exclusive use, they are lots within the meaning of ILSA.

In the instant case, each Declaration for the Condominium make the same distinction as the declaration in Giralt, as they state that each roof terrace unit and parking unit is a separate interest in land, separately deeded and not considered a limited common element.  Therefore, the Court should follow the rationale set forth in Giralt and hold that the parking space units and roof terrace units at the Condominium are "lots" under ILSA.  Accordingly, these units should be counted towards the Fewer Than 100 Lot Exemption, 15 U.S.C. § 1702(a)(s).[20]

---

[20] The facts in the instant case are distinguishable from a decision in the Southern District of Florida, which held that in a condominium where storage spaces and parking spaces were limited common elements, and not owned separately from the residential units, such storage spaces or parking spaces are not lots under ILSA.  Trotta v. Lighthouse Point Land Co., LLC, 551 F. Supp. 2d 1359, 1363 (S.D. Fla. 2008).

#3234342 (153641.001)

Interestingly, HUD's July 15, 2009 Advisory Opinion also supports the finding that the rooftop terrace units and parking space units at the Condominium are lots under ILSA to be counted towards the Under 100 Lot Unit Exemption.  HUD's July 15, 2009 Advisory Opinion explains that while "generally, [HUD] would not count a limited common element separately from the residential unit," but the situation at the Condominium was different because, "in this case, the Declaration creates the parking space units and roof top terraces as separate and distinct units and therefore should be counted along with the residential units for the purpose of the 100 Lot Exemption."

Assuming the Court rules that Defendants could have taken advantage of the Fewer Than 100 Lot Exemption, despite having no plan, this exemption still should not apply because Defendants sold more than 100 units in the Condominium.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for summary judgment should be granted. Plaintiffs should be entitled to exercise their statutory rescission rights set forth in 15 U.S.C. § 1703(c) and (d) , obtain the return of their deposits, plus accrued interest, and be reimbursed their attorneys' fees and costs.

Respectfully,

WILENTZ, GOLDMAN & SPITZER P.A.
Attorneys for Plaintiffs

By: _____
LAWRENCE C. WEINER, ESQ.
ALAN WASSERMAN, ESQ.

Dated:  December 4, 2009