UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DANIEL ROMERO and JOANN RAGUSA,

       *Plaintiffs,*

  -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

       *Defendants.*
-------------------------------------------------------------X
WILLIAM LEE and SZUYU PAN,

       *Plaintiffs,*

  -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

       *Defendants.*
-------------------------------------------------------------X
KYUNG YEOL SHIN,

       *Plaintiff,*

  -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

       *Defendants.*
-------------------------------------------------------------X
LORA KAYE,

       *Plaintiff,*

  -against-

BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,

       *Defendants.*
-------------------------------------------------------------X

Civ. No.: 09 Civ. 665 (ARR)

**THE PARTIES' JOINT STATEMENT OF UNDISPUTED MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

Civ. No.: 09 Civ. 845 (ARR)

Civ. No.: 09 Civ. 845 (ARR)

Civ. No.: 09 Civ. 1228 (ARR)

```
-----------------------------------------------------------X
JOHN GAENZLER and SARA MOSCOSO-
GAENZLER,
                                  Plaintiffs,
               -against-                              Civ. No.: 09 Civ. 1303 (ARR)
BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,
                                  Defendants.
-----------------------------------------------------------X
ANTHONY ALLICINO,
                                  Plaintiff,
               -against-                              Civ. No.: 09 Civ. 1455 (ARR)
BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,
                                  Defendants.
-----------------------------------------------------------X
JULIE and DAVID LIEVRE,
                                  Plaintiffs,
               -against-                              Civ. No.: 09 Civ. 1984 (ARR)
BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,
                                  Defendants.
-----------------------------------------------------------X
ZACK FERGUSON-STEGER,
                                  Plaintiff,
               -against-                              Civ. No.: 09 Civ. 1196 (ARR)
BORDEN EAST RIVER REALTY LLC and
JOSEPH SIMONE,
                                  Defendants.
-----------------------------------------------------------X
```

All plaintiffs, by their counsel, Wilentz, Goldman & Spitzer, P.A. and all defendants, by their counsel, D'Agostino, Levine, Landesman & Lederman, LLP, stipulate and agree that the

2

#325526 (Clean) (153641.001)

following facts are undisputed for purposes of proposed summary judgment motions, and shall be deemed admissible and evidentiary for any other hearings or trial in this action:

1. Borden East River Realty LLC ("Borden East") is the sponsor of the condominium development known as Hunters Point Condominium ("Hunters Point") located at 5-49 Borden Avenue, Long Island City, New York.

2. Pursuant to the New York Offering Plan filed on behalf of Hunters Point with the New York Attorney General's Office on September 11, 2007, Hunters Point consists and always has consisted of one hundred thirty-two (132) residential units, twenty-six (26) roof terrace units and twenty-five (25) parking space units which were all open for sale to the general public after September 11, 2007, in accordance with the terms of the filed New York Condominium Offering Plan ("Hunters Point Offering Plan").

3. Each of the plaintiffs were provided with a copy of the Condominium Offering Plan prior to execution of any contracts to purchase any units at Hunters Point after paying a refundable deposit of $100.00.

4. The various plaintiffs signed contracts to purchase Units at Hunters Point as follows:

| Purchaser | Unit | Date | Purchase Price | Deposit |
|---|---|---|---|---|
| Lora Kaye | 2E & Rooftop 1 | 11/29/07 | $666,000.00 | $66,600.00 |
| Zack Ferguson-Steger | 3J | 11/1/07 | $494,462.00 | $49,462.00 |
| Kyung Yeol Shin | 4M | 10/31/07 | $755,800.00 | $75,580.00 |
| Daniel Romero & Joann Raguso | 5K | 12/19/07 | $485,000.00 | $48,500.00 |
| William Lee & Szuyu Pan | 6D | 11/7/08 | $672,380.00 | $67,238.00 |

| Purchaser | Unit | Date | Purchase Price | Deposit |
|---|---|---|---|---|
| Anthony Allicino | 6L | 10/25/07 | $ 604,410.00 | $ 60,410.00 |
| John Gaenzler & Sara Moscoco Gaenzler | 7D and R17 | 10/18/07 | $ 718,885.00 | $ 71,885.00 |
| Julie and David Lieve | 10K | 11/29/07 | $ 965,300.00 | $ 96,530.00 |

5. 11/49 Realty Company, LLC ("11/49")[1] is the sponsor of the condominium development known as Hunters View Condominium ("Hunters View") located at 48-15 11th Street, Long Island City, New York.

6. Pursuant to the New York Public Offering Plan filed on behalf of Hunters View with the New York Attorney General's Office on September 11, 2007 ("Hunters View Offering Plan"), Hunters View initially consisted of seventy-three (73) residential units, fifteen (15) roof terrace units and thirty-seven (37) parking space units which were all open for sale to the general public after September 11, 2007, in accordance with the terms of the filed Hunters View Offering Plan. Units 8A and 8B in Hunters View were subsequently combined to be a single unit, and pursuant to the 10th amendment to the Hunters View Offering Plan, filed on or about March of 2008, the number of the offering units was reduced to 72, and unit 8A/8B was sold as a single unit.

7. Each residential, rooftop and parking space unit available at Hunters Point and Hunters View has a separate real estate tax block and lot.

8. Each roof terrace unit and each parking space unit available at Hunters Point and Hunters View is taxed separately from any residential unit.

---

[1] 11/49 and Borden East shall hereinafter be jointly referred to as the "Developer."

9. Each purchaser of a residential unit who elects to purchase a roof terrace unit or parking space unit receives fee simple ownership by deed which includes each roof terrace unit purchased and each parking space unit purchased at Hunters Point and/or Hunters View.

10. Each roof terrace unit and each parking space unit available at Hunters Point and/or Hunters View is described with a reference to the filed declaration of condominium and by-laws of the condominium.

11. Each roof terrace unit available at Hunters Point and/or Hunters View is physically separate from, and not directly adjacent to, any residential unit at the condominiums, and has a separate unit number designation in the offering plan.

12. Each parking space unit available at Hunters Point and/or Hunters View is physically separate from, and not directly adjacent to, any residential unit at the condominiums, and has a separate unit number designation in the offering plan.

13. Jointly, Hunters Point and Hunters View initially consisted of a total of two hundred five (205) residential units, forty-one (41) roof terrace units and sixty-two (62) parking space units which were all open for sale to the general public after September 11, 2007.

14. Units 8A and 8B in Hunters View were subsequently combined to be a single unit, and pursuant to the 10th amendment to the Hunters View Offering Plan, filed March of 2008, the number of the offering units was reduced to 72, and unit 8A/8B was sold as a single unit, and from this point forward Hunters View and Hunters Point collectively consist of 204 residential units.

15. The Sponsor of Hunters Point is owned 50% by Simone Borden LLC and 50% by De Con Associates, LLC, both New York limited liability companies.  For purposes of filing the

#325526 (Clean) (153641.001)

Hunters Point Offering Plan, Joseph Simone ("Simone") is identified as the principal of the Sponsor, who will be actively involved with the offering.

16. The Sponsor of Hunters View is owned 50% by Time Acquisitions Partners LLC and 50% by De Con Associates, LLC. For purposes of filing the Hunters View Offering Plan, Simone is identified as the principal of the Sponsor who will be actively involved with the offering.

17. From September 11, 2007 to the present, all units in Hunters Point and Hunters View have been and are currently being promoted under one "common promotional plan" as that term is defined in 15 U.S.C. § 1701(4).

18. From September 11, 2007 to the present, Developer used and/or maintained and continues to use and/or maintain the website www.hunterspointcondos.com to market and promote sales and/or leases of units at Hunters Point and/or Hunters View.

19. Developer retained the services of Brown Harris Stevens Project Marketing to assist in the sales and marketing of all units within Hunters Point and Hunters View.

20. Developer maintained and currently maintains a sales office at 5-49 Borden Avenue, Apt. 6E, Long Island City, New York to market and promote sales of units at Hunters Point and Hunters View.

21. Developer, in its campaign to market, promote and sell units in Hunters Point and/or Hunters View, employed several instrumentalities of interstate commerce including the United States Postal Service, the telephone, electronic means of data and voice communication (such as the Internet, email and cell phones) and non-governmental overnight courier services, such as United Parcel Service and/or Federal Express.

#325526 (Clean) (153641.001)

22. Developer or their agents placed advertisements for the sale of units in Hunters Point and/or Hunters View in national media outlets including but not limited to The New York Times and New York Post, and on various websites.

23. There is no reference to or identification of 15 U.S.C. § 1701, et seq. (the "Act") and/or its regulations, 24 C.F.R. § 1700, et seq. (the "Regulations") (jointly, "ILSA") in the Hunters Point Offering Plan or the Hunters View Offering Plan.

24. There is no reference to or identification of ILSA in any of the purchase agreements executed by plaintiffs.

25. On the date that the Hunters Point Offering Plan and Hunters View Offering Plan were filed, September 11, 2007, Developer and Simone had never heard of or knew about ILSA and it was not considered in any legal analysis or in the marketing and sales of the condominiums.

26. On the date that the Hunters Point Offering Plan was filed, September 11, 2007, there was no plan in effect by Borden East for sales in Hunters Point to be or become exempt from the requirements of ILSA.

27. On the date that the New York Offering Plan for Hunters View was filed, September 11, 2007, there was no plan in effect by 11/49 for sales in Hunters View to be or become exempt from the requirements of ILSA.

28. After in or about November or December, 2007, the Developer and Simone became generally aware of ILSA, but initially believed that by filing a New York condominium offering plan for Hunters Point and Hunters View, they provided all necessary disclosure. Following receipt of one of plaintiffs' counsel's rescission letters received on or about January 27, 2009, they began to more fully investigate allegations of ILSA violations, which

7

resulted in retention of counsel and a determination by them, after receiving a Temporary Certificate Occupancy ("TCO") on February 17, 2009, for Hunters Point and a TCO on March 12, 2009 for Hunters View, that the combined Projects were exempt under the Fewer Than 100 Lot Exemption (17 U.S.C. § 1702(b)(1) combined with the Improved Lot Exemption (15 U.S.C. §1702(a)(2) and a sale to a person for purpose of resale to such persons engaged in such business (15 U.S.C. § 1702(a)(7)).

29. On the date that each of the plaintiffs executed their purchase agreements, there was no plan in effect by Borden East for sales in Hunters Point to be or become exempt from the requirements of ILSA.

30. Simone Development Company, L.L.C., Borden East River Realty LLC, and 11/49 Realty LLC each received an inquiry, dated March 6, 2009, from HUD as to Hunters View's and Hunters Point's compliance with ILSA.

31. Simone Development Company, L.L.C., Borden East River Realty LLC, and 11/49 Realty LLC responded to the aforesaid HUD inquiry on or about April 2, 2009.

32. On April 14, 2009, Simone Development Company, L.L.C., Borden East River Realty LLC, and 11/49 Realty LLC requested that their response to the aforesaid HUD inquiry also be treated as a request for an advisory opinion from HUD on whether or not Hunters Point and Hunters View were exempt from the registration requirements of ILSA, and subsequently produced various information requested by HUD in its inquiry.

33. There were numerous oral communications between HUD and counsel for defendants relating to HUD's inquiry and defendants' request for an advisory opinion.

34. Borden East received a TCO for the Hunters Point project on February 17, 2009. One unit was sold on the day the TCO was issued and an additional 57 residential units were

unsold on that date. Borden East asserted to HUD that 58 units of the original 132 are exempt from ILSA's registration requirements pursuant to 15 U.S.C. § 1702(b)(1), combined with 15 U.S.C. § 1702(a)(2).

35. 11/49 received a TCO for the Hunters View project on March 12, 2009, and at that point, 47 units were unsold, and one unit, unit 2G, which had previously been sold, was sold to someone who purported to have acquired it for purposes of resale and lease, and who purported to be engaged in the business of real estate development, so that Borden East asserted to HUD that 48 of the final 72 units in Hunters View are exempt from ILSA's registration requirements pursuant to 15 U.S.C. § 1702(b)(1), combined with 15 U.S.C. § 1702(a)(2) and 15 U.S.C. § 1702(a)(7).

36. Borden East asserts, based upon the foregoing analysis, that only 98 units were sold within the meaning of ILSA for purposes of determining if a Registration Statement (also known as a Property Report) and Statement of Record was required to be submitted to HUD prior to the first sale of any unit in Hunters Point or Hunters View.

37. On July 15, 2009, HUD issued an advisory opinion asserting that parking units and roof top units needed to be counted toward the Fewer Than 100 Lot Exemption under ILSA and therefore, Hunters Point and Hunters View were not exempt from registration.

38. On July 17, 2009, HUD issued another advisory opinion that did not include the parking units and roof top units and concluded that the combined Hunters Point and Hunters View projects were exempt from registration.

39. The HUD website currently lists the Hunters Point and Hunters View projects as "Exempt."

#325526 (Clean) (153641.001)

40. Borden East never filed a Statement of Record for Hunters Point or Hunters View with HUD pursuant to 15 U.S.C. § 1704(a).

41. None of the plaintiffs were provided a "Property Report" as that term is defined in ILSA, in the form required by 15 U.S.C. § 1708.

42. Each of the plaintiffs sent a letter purporting to rescind their respective purchase agreements within two years of each of them executing the purchase agreement pursuant to 15 U.S.C. § 1703(c), which Borden East did not accept.

43. At the time each of the plaintiffs executed their purchase agreements, all residential, roof terrace and/or parking space units were available for purchase at Hunters Point or Hunters View, unless previously sold to other purchasers.

44. At the time each of the plaintiffs executed their purchase agreements, all residential, roof terrace and/or parking space units were available for purchase at Hunters Point or Hunters View, provided that all sales needed to be made in accordance with the terms of the Offering Plans.

45. Borden East has not complied with any of the provisions set forth in 15 U.S.C. § 1702(b)(5)(B)(ii).

46. None of the plaintiffs received a warranty deed within one hundred and eighty (180) days after the signing of their respective purchase agreements.

47. None of the plaintiffs or their spouses made a personal inspection of the unit purchased (i.e., under contract) prior to the signing of each of the purchase agreements that are the subject matter of these litigations.

48. None of the purchase agreements that are the subject matter of these litigations provide a clear and specific statement describing a good faith estimate of the year of completion,

10

and the party responsible for, providing and maintaining the roads, water facilities, sewer facilities and any existing or promised amenities, except to the extent such information is set forth in the Hunters Point Offering Plan and Hunters View Offering Plan or reasonably inferable therefrom.

49. None of the purchase agreements that are the subject matter of these litigations provided a non-waivable provision specifying that the agreement may be revoked at the option of the purchaser until midnight of the seventh day following the signing of such agreement or until such later time as may be required pursuant to New York State Law, except to the extent that under the applicable New York law, as stated in the "Procedure to Purchase" portions of the Hunters Point Offering Plan and Hunters View Offering Plan, "Prospective Purchaser shall be afforded not less than three (3) business days to review the Plan and all amendments thereto prior to executing a Purchase Agreement [and] If Purchaser has not received and read the Plan at least three (3) business days prior to executing a Purchase Agreement, a Purchaser shall have the right to rescind the Purchase Agreement within 7 days…"

50. None of the purchasers, prior to the time the purchase agreement was entered into, acknowledged in writing the receipt of a written statement by Borden East containing good faith estimates of the cost of providing electric, water, sewer, gas and telephone services to each subject unit, except to the extent that such information is set forth in the Hunters Point Offering Plan and Hunters View Offering Plan or reasonably inferable therefrom.

51. Prior to the time each purchase agreement was executed, Borden East did not furnish each Plaintiff with a statement setting forth in descriptive and concise terms all such liens, reservations, taxes, assessments and restrictions which are applicable to the particular unit

11

#325526 (Clean) (153641.001)

being purchased, except to the extent that such information is set forth in the Hunters Point Offering Plan and the Hunters View Offering Plan or reasonably inferable therefrom.

52.     At the time of the signing of each subject purchase agreement, Hunters Point and each unit under contract were subject to construction financing, as disclosed in the Hunters Point Offering Plan, as to which any Unit would be released at the time of its transfer of title to a purchase from the Sponsor.

53.     Borden East never executed and supplied each plaintiff with a written instrument designating a person within New York as its agent for service of process and acknowledging that Borden East submits to the legal jurisdiction of New York.

54.     Borden East is a New York limited liability company and its legal address is on the cover of the Hunters Point Offering Plan.

55.     Borden East never provided any of the plaintiffs with a written affirmation that it has complied with the provisions set forth in 15 U.S.C. § 1702(b)(8)(G).

56.     Defendants do not claim that each lot was sold or leased to residents of the State in which the land is located as provided in 17 U.S.C. § 1702(b)(7).

#325526 (Clean) (153641.001)

57. Defendants do not claim that the principal residence of each purchaser is within the same standard metropolitan or statistical area as defined by the Office of Management and Budget, as the lot purchased as provided in 17 U.S.C. § 1702(b)(8).

Dated: December 4, 2009

Wilentz Goldman & Spitzer P.A.

By: _____
Lawrence C. Weiner
90 Woodbridge Center Drive
Woodbridge, NJ 07095
Attorneys for Plaintiffs

D'Agostino Levine Landesman & Lederman, LLP

By: _____
Bruce H. Lederman
345 Seventh Avenue
New York, NY 10001
Attorneys for Defendants

#325526 (Clean) (153641.001)